2014 UT App 239

## THE UTAH COURT OF APPEALS

BRITTNEY TOBLER,
Petitioner and Appellee,
*v.*
RUSSELL TODD TOBLER,
Respondent and Appellant.

Opinion
No. 20120912-CA
Filed October 9, 2014

Sixth District Court, Richfield Department
The Honorable George M. Harmond
No. 104600270

J. Bryan Jackson, Attorney for Appellant

Michael R. Labrum and Johanna Williams,
Attorneys for Appellee

JUDGE JOHN A. PEARCE authored this Opinion, in which JUDGE STEPHEN L. ROTH and SENIOR JUDGE PAMELA T. GREENWOOD concurred.[1]

PEARCE, Judge:

¶1    Russell Todd Tobler (Husband) appeals from the district court's decree of divorce, findings of fact, and conclusions of law. We affirm the district court in all respects but one. We determine that, on the record before us, we cannot discern whether the district court properly calculated Husband's total income for child support purposes. We remand this matter for the entry of further findings

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

regarding Husband's income and, if warranted by those findings, a recalculation of the child support award.


BACKGROUND

¶2     Husband and Brittney Tobler (Wife) married on October 4, 2007, in Manti, Utah. They had a daughter in April 2010. Wife was pregnant with twins when she filed for divorce on December 15, 2010. The twins, a boy and a girl, were born in February 2011.

¶3     Wife's divorce petition sought sole physical custody and joint legal custody of the children. She also sought alimony, the equitable division of the parties' real and personal property, and a one-half share in Husband's pension, profit-sharing plan, and other retirement benefits. Wife also requested that Husband be ordered to assume and pay all of the marital debts and obligations.

¶4     Along with her petition, Wife filed a motion for temporary relief, arguing that she was unable to work due to her pregnancy. She requested possession and use of the marital home, reasonable temporary child support and alimony, and an order that Husband service the marital debt during the pendency of the action. Husband agreed that child support was appropriate and that he should be responsible for the marital debt, but argued that his debt service should ultimately be factored into the equitable division of the parties' property. Husband also opposed any award of temporary alimony, arguing that Wife possessed four post-high-school degrees and was capable of working and supporting herself, particularly if Husband made the marital debt payments. Husband also opposed Wife's request for the marital home, arguing that she had already moved in with her mother.

¶5     In May 2011, while Wife's motion for temporary relief was pending, Husband filed a motion to bifurcate the proceedings, asking the district court to grant the parties an immediate divorce and reserve all other issues for future disposition. Husband argued

that bifurcation would facilitate resolution of the financial obligations that were a "bleeding wound" upon the marital estate, prevent Wife from holding Husband's life "hostage," and give Husband "some tranquility in his life." Wife initially failed to respond to the bifurcation motion, but when Husband filed a notice to submit for decision, Wife filed an opposition arguing that bifurcation would create an undue delay in the proceedings and increase their cost.

¶6     Following a September 2011 hearing, the court issued temporary orders granting Wife custody of the children, ordering Husband to pay child support of $2,033 per month, and awarding statutory parent-time to Husband. The court awarded Wife sole possession of the marital home, ordered Husband to maintain all marital debt except for the payments on a single vehicle, and awarded Wife temporary spousal support of $2,500 per month.

¶7     The district court denied Husband's bifurcation motion, determining that Husband had failed to demonstrate "a convenience or necessity issue that would be solved by bifurcation." The court further explained that the bifurcation decision was a matter of the court's discretion and that, in its experience, bifurcation tended to increase delay. The court also expressed its concern that bifurcation might affect issues such as Wife's access to health insurance.

¶8     The district court held a bench trial in April 2012 and issued a memorandum decision in June 2012. The court awarded Wife sole physical custody of the children and awarded Husband and Wife joint legal custody. Wife was awarded child support of $2,048 per month based on Husband's monthly income of $12,867. The court calculated Husband's monthly income by averaging the income on his last three tax returns and adding $1,285 per month in rental income generated from a house Husband owned in St. George, Utah.

¶9     The district court also awarded Wife alimony of $2,000 per month for a period of time equal to the length of the marriage as of

the date of the memorandum decision—four years and eight months. The district court rejected Wife's argument that alimony should be extended beyond the length of the marriage due to Wife's continuing educational needs but also rejected Husband's argument that the court should count Husband's temporary alimony payments against the total period of alimony awarded.

¶10    Husband objected to the memorandum decision, raising issues relating to the award of parent-time, the calculation of his income, the calculation and length of alimony, property division, and child support. The district court issued an order overruling most of Husband's objections on September 28, 2012.[2] The court issued its final decree of divorce that same day. The divorce decree largely tracked the relief granted in the prior memorandum decision and ordered Husband and Wife to each bear their own attorney fees and costs. Husband appeals.

ISSUES AND STANDARDS OF REVIEW

¶11    Husband argues that the district court erred when it denied his motion to bifurcate the proceedings and entered its temporary orders awarding spousal support to Wife during the pendency of the action, requiring Husband to service the bulk of the marital debt, and forbidding the sale of marital assets. "Trial courts have broad discretion to bifurcate trials, and we review the [district] court's bifurcation [decision] in this case for an abuse of that discretion." *Parker v. Parker*, 2000 UT App 30, ¶ 5, 996 P.2d 565. The abuse of discretion standard also applies to our review of the district court's temporary orders. *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 39, 176 P.3d 476 ("The trial court has significant

---

2. The district court did, upon Husband's objection, reduce Husband's available income for alimony purposes by $500 per month to reflect rent payments he made to his mother. It also clarified the value of Husband's 401(k) account as of the date of the marriage.

discretion in fashioning temporary support during the pendency of a divorce action.").

¶12 Husband also raises multiple arguments challenging the various provisions of the final decree of divorce, including arguments relating to parent-time, child support, alimony, and property division. We review a district court's decisions in these areas for abuse of discretion. *See Bell v. Bell*, 2013 UT App 248, ¶ 11, 312 P.3d 951 ("We review a trial court's child support order for an abuse of discretion." (citation and internal quotation marks omitted)); *Boyer v. Boyer*, 2011 UT App 141, ¶¶ 8–9, 259 P.3d 1063 (discussing our standards of review of property division and alimony issues); *Childs v. Childs*, 967 P.2d 942, 946 n.2 (Utah Ct. App. 1998) ("[W]e will not disturb the trial court's visitation determination absent a showing that the trial court abused its discretion.").

ANALYSIS

I. Marshaling

¶13 As an initial matter, we address Wife's contention that Husband's claims on appeal must fail because they challenge the district court's factual findings and Husband has not marshaled the evidence in support of the challenged findings. Wife relies on prior cases—which were good law at the time the briefs in this matter were submitted—that treated an appellant's failure to marshal as a type of procedural default that precluded this court from even reaching the merits of arguments that were not supported by adequate marshaling. *See, e.g.*, *Chen v. Stewart*, 2004 UT 82, ¶ 19, 100 P.3d 1177 ("If the evidence is inadequately marshaled, this court assumes that all findings are adequately supported by the evidence.").

¶14 However, after Wife submitted her appellate brief, the Utah Supreme Court issued its decision in *State v. Nielsen*, 2014 UT 10, 326 P.3d 645. In *Nielsen*, the supreme court expressly "repudiate[d]

the default notion of marshaling sometimes put forward in our cases and reaffirm[ed] the traditional principle of marshaling as a natural extension of an appellant's burden of persuasion." *Id.* ¶ 41.[3] The supreme court explained that marshaling remains an important part of successfully challenging factual findings on appeal because "a party challenging a factual finding or sufficiency of the evidence to support a verdict will almost certainly fail to carry its burden of persuasion on appeal if it fails to marshal." *Id.* ¶ 42. But the supreme court also instructed appellees and appellate courts alike to address the merits of an appellant's arguments without relying on marshaling as a "stand-alone basis" for rejecting claims on appeal. *Id.* ¶ 44. "The focus should be on the merits [of the arguments presented], not on some arguable deficiency in the appellant's duty of marshaling." *Id.* ¶ 42.

¶15    In light of *Nielsen*, we decline Wife's invitation to summarily reject Husband's arguments for his alleged lack of marshaling. Rather, we address the merits of Husband's arguments and consider any marshaling deficiencies as part of our overall evaluation of whether Husband has met his burden of persuasion on appeal.

## II. Bifurcation and Temporary Orders

¶16    Husband argues that the district court erred when it denied his motion to bifurcate the proceedings. Husband's motion asked the district court to terminate the parties' marriage by entering a decree of divorce while reserving all other issues for future resolution. The reasons Husband presented to the district court in support of his motion were that bifurcation would help to resolve the financial obligations that were a "bleeding wound" upon the marital estate, prevent Wife from holding Husband's life

---

3. The supreme court also expressly repudiated "the requirements of playing 'devil's advocate' and of presenting 'every scrap of competent evidence' in a 'comprehensive and fastidious order.'" *State v. Nielsen*, 2014 UT 10, ¶ 43, 326 P.3d 645 (citation omitted).

"hostage," and give Husband "some tranquility in his life."[4] Husband now argues that the district court erred in denying his motion, because both parties wanted a divorce and because bifurcation would have furthered convenience and avoided prejudice.

¶17 The district court may order separate trials on any claims or issues "in furtherance of convenience or to avoid prejudice." Utah R. Civ. P. 42(b). "Trial courts have broad discretion to bifurcate trials, and we review the [district] court's bifurcation in this case for an abuse of that discretion." *Parker v. Parker*, 2000 UT App 30, ¶ 5, 996 P.2d 565. The district court's written order denied Husband's motion on the ground that "[t]here needs to be some showing that there is a convenience or necessity issue that would be solved by bifurcation and the court cannot find that in this case." We agree with Husband that the district court's articulation of the necessary showing—"convenience or necessity" rather than "in furtherance of convenience or to avoid prejudice"—did not track rule 42(b)'s precise language. However, that articulation did not cause the district court to abuse its broad discretion to manage the cases before it.

¶18 At the motion hearing, the district court explained that, in the court's experience, bifurcation "tends to delay things" and stated that "this case is not moving very fast anyway." The court also expressed concern about the effect that bifurcation might have on Wife's ability to obtain health insurance and similar benefits. The district court's decision to deny Husband's bifurcation motion for these reasons fell within the bounds of the court's discretion.

---

4. Husband did not argue to the district court that bifurcation was necessary to limit the ultimate duration of the time period for which he could be ordered to pay alimony. *See* Utah Code Ann. § 30-3-5(8)(j) (LexisNexis 2013) (limiting alimony awards to the duration of the marriage absent a finding of extenuating circumstances). We address Husband's challenge to the duration of the district court's permanent alimony award later in this opinion. *See infra* ¶¶ 41–42.

¶19    In a related argument, Husband argues that the district court's temporary orders had the effect of holding him "hostage" during the pendency of the litigation due to the requirements that Husband pay temporary child support and alimony, service the bulk of the marital debt, and refrain from selling any property. Husband argues that these requirements were prejudicial to him and that this prejudice "should have been considered by the trial court at the time of denying bifurcation."

¶20    We cannot dispute Husband's position that, from his standpoint, these requirements were prejudicial. However, Husband did not clearly present this prejudice argument to the district court in support of his bifurcation motion. Even if he had, the district court possessed the discretion to conclude that any prejudice to Husband was outweighed by the potential for a more expeditious resolution in an unbifurcated proceeding. Moreover, even if the district court had entered an order of bifurcation, there may still have been a need for temporary orders to govern the parties' affairs during litigation of the remaining issues. *See* Utah Code Ann. § 30-3-3(3) (LexisNexis 2013) ("In [a divorce action,] the court may order a party to provide money, during the pendency of the action, for the separate support and maintenance of the other party and of any children in the custody of the other party."); *McPherson v. McPherson*, 2011 UT App 382, ¶¶ 5–10, 18, 265 P.3d 839 (acknowledging that temporary alimony award "remained in effect" despite prior entry of bifurcated divorce decree).

¶21    As to the substantive provisions of the temporary orders, the district court "has significant discretion in fashioning temporary support during the pendency of a divorce action." *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 39, 176 P.3d 476. Husband has not persuaded us that any aspect of the temporary orders constituted an abuse of the district court's significant discretion, and we therefore affirm those orders. *See generally State v. Robison*, 2006 UT 65, ¶ 21, 147 P.3d 448 (discussing appellants' burdens on appeal).

### III. Parent-Time

¶22   Husband argues that the district court erred in awarding parent-time. Although Husband's exact argument is unclear, he appears to argue that the district court erred in awarding him parent-time with the parties' oldest daughter, who was not yet five years old, in accordance with the statutory minimum established by Utah Code section 30-3-35.5 rather than under the more generous provisions of section 30-3-35. *See* Utah Code Ann. § 30-3-35 (LexisNexis 2013) (establishing minimum parent-time for children ages five to eighteen); *id.* § 30-3-35.5 (establishing minimum parent-time for children under five years of age). Husband argues this was improper because both he and Wife agreed that he should have additional parent-time with the eldest child.

¶23   In overruling Husband's objection on this issue, the district court stated,

> Based on the evidence at trial, the court found it was in all the children's best interests that parent time be based on the statutory time for the youngest children. The evidence was clear that [the oldest daughter] had a difficult time adjusting to parent time and it is clearly in her best interests for parent time to include the twins.

The district court also stated that it was "unclear where [Husband] developed the idea that 'it was the intention of the court to grant additional visitation' relative to [the oldest daughter]."

¶24   The district court has the discretion to establish parent-time in the best interests of the children. *Childs v. Childs*, 967 P.2d 942, 946 n.2 (Utah Ct. App. 1998). Husband presents no authority to support his assertion that the district court abused its discretion in ordering that he have equal parent-time with all of the parties' children, despite the slight age difference between them. The parties' oldest daughter is less than a year older than the twins, and

the district court expressly found that it was "clearly in her best interests for parent time to include the twins." Husband has not persuaded us that the district court abused its broad discretion in ordering the parties' three young children to have parent-time with Husband together, consistent with the statutory schedule applicable to all of the children based on their ages.

¶25 Husband also suggests that Wife agreed that Husband should have additional parent-time with the oldest daughter and that the district court was obligated to respect the parties' wishes. However, there appears to have been no such agreement on this issue. Wife opposed Husband's objection to the court's order, stating that she "did not agree with [Husband] that visitation for the oldest child would be in accordance with [Utah Code section] 30-3-35."

## IV. Child Support

¶26 Husband raises two challenges to the district court's child support award, both of which attack the district court's determination of his income. First, Husband argues that the district court failed to make adequate factual findings to support its inclusion of Husband's overtime wages as part of Husband's total available income. Second, Husband argues that the district court erred when it treated his $1,285 in gross monthly rental income as available income without deducting his mortgage payments and other necessary expenses.

¶27 On the overtime issue, Husband relies on the statutory requirement that income in excess of one forty-hour per week job may be considered for child support purposes "[i]f and only if during the time prior to the original support order, the parent normally and consistently worked more than 40 hours at the parent's job." Utah Code Ann. § 78B-12-203(2) (LexisNexis 2012). Husband argues that the district court made no findings that Husband normally and consistently worked in excess of forty hours per week. *See Andrus v. Andrus*, 2007 UT App 291, ¶ 17, 169 P.3d 754 (discussing the need for adequate factual findings).

Inadequate findings by the district court will be deemed reversible error "when the facts are not clear from the record." *Id.*

¶28 Here, however, it is clear from the record that Husband regularly worked overtime hours. Wife testified at trial that Husband normally worked overtime, and she submitted tax returns and paystubs reflecting a three-year history of overtime.[5] The district court based its determination of Husband's wage income on "the average [of Husband's] last three years' income from the parties' tax returns from 2009 and 2010, and his W-2 from 2011." To the extent that those three years of income data reflected Husband's overtime, the average of the three years' figures would reflect the amount of overtime that Husband "normally and consistently worked" over that time frame.[6] *See* Utah Code Ann. § 78B-12-203(2). In light of this record, we see no reason to disturb the district court's inclusion of overtime in its determination of Husband's wage income.

¶29 On the rental income issue, Husband argues that the district court erred when it treated the $1,285 per month he receives from renting out a St. George residence as income, without deducting the mortgage payments and other necessary business expenses relating to the rental property. *See id.* § 78B-12-203(4)(a) ("Gross income from self-employment or operation of a business shall be calculated by subtracting necessary expenses required for self-employment or business operation from gross receipts."). The

_____

5. Husband seemed to agree that he regularly received overtime pay. At trial, Wife's counsel asked Husband to confirm that he had received overtime pay every year for the last five years. Husband responded, "I work overtime when they ask me to and to help others out, yes."

6. There is no suggestion here that the three-year average of Husband's income was inflated by some one-time overtime event that could not be considered normal and consistent. Certainly, Husband has cited nothing in the record to support such a conclusion.

monthly business expenses Husband identifies include a mortgage payment of $615, property taxes of $108, and insurance premiums of $45.

¶30 In overruling Husband's objection on this issue, the district court stated that it "clearly took into account [Husband's] rental income *and the deductions therefrom* when determining his income" for child support purposes. (Emphasis added.) However, based on our review of the district court's memorandum decision, it is not clear that Husband's claimed business expenses were deducted from the $1,285 in monthly rent. The memorandum decision stated Husband's monthly income to be $12,867, which represented the three-year average of Husband's monthly wage income "*together with* the $1,285.00 he receives as rental income from the house in St. George." (Emphasis added.)

¶31 If the district court failed to deduct Husband's legitimate business expenses from his gross rental income, it would constitute an abuse of the court's discretion. We therefore remand this matter to the district court for more explicit findings on what the court deducted and, if necessary, a recalculation of Husband's income taking into account Husband's reasonable business expenses relating to the St. George property. The district court should then recalculate child support and revisit any other issues affected by the change in Husband's available income.

## V. Alimony

¶32 Husband challenges two aspects of the district court's alimony award. First, Husband argues that the district court erred when it allowed Wife to include $200 in monthly savings as a reasonable expense in calculating her need but disallowed Husband's $1,269 contribution from each paycheck into his 401(k) account as a reasonable expense in calculating his ability to pay. Second, Husband challenges the time period for which alimony was awarded, arguing that Wife was able to support herself by the time the decree was entered and that the district court's failure to allow him credit for his temporary alimony payments resulted in

alimony being awarded for a period of time in excess of the length of the marriage.

¶33    We see no abuse of discretion in the district court's disparate treatment of the parties' claimed savings expenses. The district court found that Wife's savings expense was reasonable because "the parties regularly saved during the marriage, and it is reasonable for [Wife to] continue saving consistent with the parties' married lifestyle." *See Bakanowski v. Bakanowski*, 2003 UT App 357, ¶ 16, 80 P.3d 153 ("The critical question is whether funds for post-divorce savings, investment, and retirement accounts are necessary because contributing to such accounts was standard practice during the marriage and helped to form the couple's marital standard of living.").

¶34    The district court made no such finding regarding Husband's 401(k) contributions, ruling instead that those contributions were not "a reasonable need, but rather a savings withholding." Husband does not challenge either the district court's express finding that the amount of his 401(k) contributions was not reasonable or its implicit finding that those contributions were not consistent with the parties' marital practice.[7] Nor does he argue on appeal that he should have been allowed a savings expense equal to Wife's monthly savings or in some other amount supported by the parties' marital practice.

¶35    Rather, Husband argues that the district court's failure to allow his 401(k) contributions as a reasonable expense grants Wife a double recovery because she was also awarded a one-half interest

---

7. Husband does assert, without any citation to the record, that "[t]he evidence was uncontroverted that [Husband's 401(k) contributions] regularly occurred." However, this assertion is not synonymous with a claim that such contributions regularly occurred *over the course of the parties' marriage*. And again, Husband has not cited any evidence in the record that would support a finding that his 401(k) contributions comported with a pattern established during the marriage.

in the marital portion of the 401(k) account. Husband presents no authority for this position, and we will not disturb the district court's ruling on this basis. Further, it would appear that any "double recovery" would result from Husband's voluntary commingling of his post-separation income with a known marital asset that would likely be valued as of the date of the decree. *See Rappleye v. Rappleye*, 855 P.2d 260, 262 (Utah Ct. App. 1993) ("As a general rule, the marital estate is valued at the time of the divorce decree."). For these reasons, we see no abuse of discretion in the district court's treatment of the parties' post-separation savings.

¶36    We also see no abuse of discretion in the amount or duration of the district court's alimony award. In evaluating Husband's arguments to the contrary, it is helpful to understand how the district court approached the parties' alimony disputes. The parties presented the district court with competing arguments about Wife's need for alimony and the length of time that alimony should be awarded. Wife argued that she was unable to return to work because she needed to care for the parties' three young children. Husband contended that Wife was capable of working and supporting herself without alimony. The district court resolved this dispute in Wife's favor, ruling that "[t]he parties mutually decided that [Wife] should give up working in order to care for the parties' children full time" and that "[i]t is not reasonable in the context of this case to require [Wife] to work while having the care of three children all under 3 years of age, at least in the short term." Accordingly, the district court found Wife's present ability to work was limited and that she was unable to meet her own needs.

¶37    Wife also argued that alimony should be awarded for a period of time greater than the length of the marriage because she needed additional education. *See* Utah Code Ann. § 30-3-5(8)(j) (LexisNexis 2013) ("Alimony may not be ordered for a duration longer than the number of years that the marriage existed unless, at any time prior to termination of alimony, the court finds extenuating circumstances that justify the payment of alimony for a longer period of time."). Husband argued that Wife's desire for further education did not constitute an extenuating circumstance

warranting alimony in excess of the duration of the marriage. Husband also argued that the district court should count his temporary alimony payments toward the statutory duration-of-the-marriage time limit.

¶38    The district court rejected Wife's request for an extended alimony period, ruling that Wife had presented "no legal support for the extension of alimony to allow for further education." The district court then ruled that it would "not extend alimony beyond the length of the marriage, *but* will order alimony payments for four years and eight months." (Emphasis added.)

¶39    The district court's language implicitly rejected Husband's argument that he should have received credit for his prior temporary alimony payments, a reading that is confirmed by the district court's overruling of Husband's subsequent objection on this issue. Husband objected that the district court's memorandum decision "did not state specifically whether temporary spousal support previously paid by [Husband] to [Wife] should be credited against the four-year-eight-month period." In rejecting Husband's objection, the district court stated that it had "ruled on that argument, by stating the length of alimony as a time certain . . . ; that ruling precludes temporary alimony already paid as credit against the final alimony determination."

¶40    Husband argues on appeal that Wife "was gainfully employed before marriage and qualified to obtain appropriate employment with having various degrees should she reenter the workforce." Husband then argues, without supporting authority, that it was unreasonable for the district court to "assume [Wife] would be unable to work for four years and eight months" due to her custody of the parties' three small children. We disagree. One of the statutory factors that must be considered in determining an alimony award is "whether the recipient spouse has custody of minor children requiring support." Utah Code Ann. § 30-3-5(8)(a)(v). Prior cases have recognized that a recipient spouse's earning capacity may be affected by the custody of children. *See Fletcher v. Fletcher*, 615 P.2d 1218, 1223 (Utah 1980) (affirming

alimony award as "reasonable" where recipient spouse's "income was limited by part-time employment so she might give adequate care and nurturing to the three younger children, ranging in age from four to eight"); *Rehn v. Rehn*, 1999 UT App 41, ¶ 9, 974 P.2d 306 ("[I]t is sufficient to impute a lesser income to the recipient spouse so that she might give adequate care and nurturing to the parties' minor children . . . ."). In light of this authority, we see no abuse of discretion in the district court's determination of Wife's earning capacity.

¶41    Husband also argues that the district court's award of alimony for four years and eight months, without giving him credit for his temporary alimony payments, resulted in a total alimony award period that exceeds the duration of the parties' marriage.[8] *See generally* Utah Code Ann. § 30-3-5(8)(j) (limiting the length of alimony awards to the duration of the of the parties' marriage). Husband's argument assumes that both temporary alimony and permanent alimony count against Utah Code section 30-3-5(8)(j)'s presumptive "duration of the marriage" time limit on alimony awards. In essence, Husband argues that the statutory limit on the duration of alimony awards begins running upon an award of temporary alimony rather than upon an award of permanent alimony.

¶42    Husband has not directed this court to any case that interprets Utah Code section 30-3-5(8)(j) to include temporary alimony within that statute's definition of "alimony" for purposes of the statute's time limitation. *See id.* Nor has he made a supported argument for his preferred interpretation of section 30-3-5(8)(j) based on general principles of statutory interpretation. Finally, Husband has failed to address the district court's balancing of the parties' competing arguments about the proper duration of the alimony award. These issues are critical to the success of his argument, and by failing to address them, Husband has failed to

---

8. Neither party raises any argument that the district court improperly considered four years and eight months to be the duration of the marriage.

meet his burden of persuasion on appeal. *See Salt Lake County v. Butler, Crockett & Walsh Dev. Corp.*, 2013 UT App 30, ¶ 37 n.5, 297 P.3d 38 (discussing an appellant's "burden of persuasion on appeal"); *cf. Donnelly v. Donnelly*, 2013 UT App 84, ¶ 46, 301 P.3d 6 ("In light of Wife's failure to analyze why these grounds are insufficient to support the district court's valuation decision, her argument falls short of demonstrating an abuse of discretion."). In light of Husband's failure to meet his burden of persuasion, we will not disturb the district court's alimony award based on his argument that the district court ordered alimony "for a duration longer than the number of years that the marriage existed." *See* Utah Code Ann. § 30-3-5(8)(j).

## VI. Property Division

¶43     Husband argues that the district court erred in its division of Husband's 2011 bonus and his 401(k) retirement plan. As to Husband's 2011 bonus of roughly $18,000, Husband argues that the district court erred in treating the bonus as marital property rather than as Husband's income and in dividing the bonus equally between the parties without accounting for the related tax liability. Husband also suggests that Wife's portion of the bonus should have been completely offset by a $10,000 check that Wife had written to herself and $3,000 that Wife had obtained from an unauthorized sale of stock. As to the 401(k) account, Husband argues that the district court undervalued that account as of the time of the marriage by approximately $2,000, thereby erroneously increasing the amount that was divided between the parties as part of the marital estate.

¶44     Husband presents no record citations for any of the numerous factual assertions that he makes in support of these arguments, and we will not search the record in an effort to locate them. *See Tanner v. Carter*, 2001 UT 18, ¶ 19, 20 P.3d 332 (stating that it is not an appellate court's burden "to comb the record for evidence" in support of an appellant's arguments); *Wohnoutka v. Kelley*, 2014 UT App 154, ¶ 6, 330 P.3d 762 ("An appellate court should not be asked to scour the record to save an appeal by

remedying the deficiencies of an appellant's brief."). Further, he has not demonstrated error below with reasoned argument supported by applicable legal authority. Under these circumstances, Husband has not carried his burden of persuasion on his property division issues. *See State v. Nielsen*, 2014 UT 10, ¶ 34, 326 P.3d 645 (discussing Utah's briefing requirements as "an outgrowth of a party's burden of persuasion on appeal"); *State v. Robison*, 2006 UT 65, ¶ 21, 147 P.3d 448 ("It falls squarely upon an appellant to surmount the filing, briefing, and persuasion burdens associated with an appeal.").

## VII. Attorney Fees

¶45 Wife asks this court to award her attorney fees and costs incurred in responding to Husband's appeal. Wife argues that an award of attorney fees and double costs is warranted as a sanction against Husband under rule 33(a) of the Utah Rules of Appellate Procedure. In the alternative, she asks us to order Husband to pay her attorney fees and costs pursuant to Utah Code section 30-3-3(1).

¶46 Rule 33(a) of the Utah Rules of Appellate Procedure allows this court to impose sanctions, which may include attorney fees and double costs, against a party whose appeal is "either frivolous or for delay." Utah R. App. P. 33(a). Wife argues that Husband's appeal is "frivolous in its entirety," citing his failure to marshal the evidence and to provide record citations to the evidence allegedly supporting his positions. Wife also asserts that Husband has made erroneous statements of law with no supporting authority and has ignored established law when it was contrary to his position.[9]

¶47 The imposition of rule 33 sanctions "is a serious matter and only to be used in egregious cases, lest the threat of such sanctions

---

9. Wife does not provide any specific examples of these alleged shortcomings and refers us generally to the discussion in the analysis section of her brief. However, we will not dissect Wife's analysis in search of clues as to which of Husband's arguments she deems sanctionable.

should chill litigants' rights to appeal lower court decisions." *Redd v. Hill*, 2013 UT 35, ¶ 28, 304 P.3d 861. Although the bulk of Husband's arguments on appeal have been unsuccessful, we cannot say that his appeal, taken as a whole, presents the egregious case that warrants rule 33 sanctions. We decline to award attorney fees to Wife as a rule 33 sanction under the circumstances of this case.

¶48    Wife requests in the alternative that we order Husband to pay her appellate attorney fees and costs under Utah Code section 30-3-3, which provides for attorney fee awards in divorce actions. *See* Utah Code Ann. § 30-3-3(1) (LexisNexis 2013) (allowing awards of fees and costs against a party to a divorce proceeding "to enable the other party to prosecute or defend the action"). Ordinarily, we award appellate attorney fees and costs when a party was awarded fees and costs below and then prevails on appeal. *Bell v. Bell*, 810 P.2d 489, 494 (Utah Ct. App. 1991). In this case, however, the district court expressly ordered both parties to bear their own attorney fees and costs. Thus, the general rule that a party who is awarded fees below is entitled to an award of appellate fees after a successful appeal does not apply here. *See Cantrell v. Cantrell*, 2013 UT App 296, ¶ 22 n.6, 323 P.3d 586 ("An award of fees on appeal requires both a fee award below and success in the appellate court." (citation and internal quotation marks omitted)).

¶49    Notwithstanding the district court's refusal to award her attorney fees below, Wife argues that this court has the discretion to award her appellate attorney fees pursuant to Utah Code section 30-3-3. In support of her request, Wife cites—but does not analyze—*Maughan v. Maughan*, 770 P.2d 156 (Utah Ct. App. 1989). *See id.* at 162–63 (stating that section 30-3-3's grant of authority "includes attorney fees incurred on appeal"). In *Maughan*, this court awarded appellate attorney fees pursuant to Utah Code section 30-3-3, but, in that case, the trial court had awarded attorney fees below. *See id.* at 159. Even assuming that Utah Code section 30-3-3 provides an exception to the general rule that a party must be awarded fees below to receive fees on appeal, Wife has not

persuaded us that an award of appellate fees is merited in this case. We therefore deny Wife's request for appellate attorney fees.

CONCLUSION

¶50    We affirm the district court's denial of Husband's motion to bifurcate, as well as the court's temporary orders. However, we cannot determine whether the district court deducted Husband's reasonable business expenses from his rental income in calculating Husband's total income for child support purposes. We therefore remand for further proceedings to determine Husband's net rental income and, if necessary, to adjust the child support award and other related calculations. In all other respects, we affirm the district court's decree of divorce, findings of fact, and conclusions of law.

——————