2018 UT App 34

## THE UTAH COURT OF APPEALS

KYLEE J. SANDUSKY,
Appellee,
*v.*
GEORGE A. SANDUSKY,
Appellant.

Opinion
No. 20160131-CA
Filed February 23, 2018

Third District Court, Silver Summit Department
The Honorable Kara L. Pettit
No. 114500103

Elizabeth A. Shaffer, Attorney for Appellant

Paul J. Morken and Frank D. Mylar, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
GREGORY K. ORME and DAVID N. MORTENSEN concurred.

POHLMAN, Judge:

¶1      George A. Sandusky and Kylee J. Sandusky had been
married for more than twenty-three years when they entered
into a separation agreement in early 2010 (the Separation
Agreement). After approximately sixteen months during which
the parties complied with the terms of that agreement, Kylee
petitioned for divorce.[1] Following a trial, the court entered a
decree of divorce that largely adopted and enforced the terms of

_____

1. "As is our practice in cases where both parties share a last
name, we refer to the parties by their first name with no
disrespect intended by the apparent informality." *See Smith v.
Smith*, 2017 UT App 40, ¶ 2 n.1, 392 P.3d 985.

the Separation Agreement. But the court determined that the agreement's term regarding the division of checking and savings accounts was not specific enough to be enforced and ordered an equal distribution of the financial accounts between the parties. In addition, the court awarded alimony to Kylee. George appeals, arguing that the trial court should have bifurcated the trial and that the court's property distribution and alimony award exceeded its discretion in light of the Separation Agreement. He further argues that the court should have granted his motion for a new trial and awarded him attorney fees. We affirm.

## I. Motion to Bifurcate

¶2      George first contends that the trial court abused its discretion in refusing to bifurcate the trial. In particular, he asserts that the issue of "the validity of the Separation Agreement was clearly separable" and should have been tried first and apart from the issues regarding "the asset determination and distribution of marital and separate property."

¶3      Rule 42(b) of the Utah Rules of Civil Procedure allows a court, "in furtherance of convenience or to avoid prejudice," to "order a separate trial of any claim . . . or of any separate issue." Because this rule "gives the trial court considerable discretion to administer the business of its docket and determine how a trial should be conducted," this court "will not disturb the trial court's bifurcation order unless the trial court abused its discretion." *Walker Drug Co. v. La Sal Oil Co*., 972 P.2d 1238, 1244 (Utah 1998) (citation and internal quotation marks omitted); *accord Tobler v. Tobler*, 2014 UT App 239, ¶ 11, 337 P.3d 296. Generally, a trial court abuses its discretion if its decision "exceeds the limits of reasonability." *Shinkoskey v. Shinkoskey*, 2001 UT App 44, ¶ 15, 19 P.3d 1005 (citation and internal quotation marks omitted).

¶4    George moved for bifurcation before trial, asking the court to "bifurcate proceedings related to the validity and enforceability" of the Separation Agreement and requesting that all other issues, including alimony and property distribution, be reserved for trial. In support, George asserted that "[o]nce the issue of the validity of the [Separation] Agreement is decided, there is a greater likelihood the other issues . . . would be able to be mediated without the need for litigation" and that therefore bifurcation "would serve both the interests of convenience and judicial economy and impose no prejudice to either party." Kylee opposed bifurcation, arguing that all the issues in the case, including the validity of the Separation Agreement, were "completely intertwined." She asserted that "[b]ifurcation would not help" the parties mediate their dispute and that, instead of avoiding prejudice, bifurcation "would be highly inconvenient and prejudicial." The trial court denied George's motion.

¶5    On appeal, George has not shown that the trial court's decision fell outside the bounds of its discretion. In the arguments before the trial court, George and Kylee sharply disagreed both about whether the issue of the Separation Agreement's validity was "a separate issue" and whether bifurcation would be convenient and avoid prejudice. *See* Utah R. Civ. P. 42(b). Moreover, George's most significant reason for bifurcation was improving the odds of settlement, but Kylee did not share this belief. Under these circumstances, we cannot say that the trial court exceeded its considerable discretion in weighing these competing viewpoints and choosing not to bifurcate the proceedings.[2]

---

2. Even assuming George could demonstrate that the trial court abused its discretion in not bifurcating the proceedings, his challenge to that decision would nevertheless fail because he has not shown that he was prejudiced as a result. George's broad

(continued…)

## II. Property Distribution and Alimony

¶6 George raises a number of arguments on appeal regarding property distribution and alimony. He asserts that "the decision of the trial court does not conform with the Separation Agreement, prior Utah precedent or any notion of equity."

¶7 "Generally, district courts have considerable discretion concerning property distribution in a divorce proceeding and their determinations enjoy a presumption of validity." *Dahl v. Dahl*, 2015 UT 79, ¶ 119 (citation and internal quotation marks omitted). We therefore will uphold the trial court's decision on appeal "unless a clear and prejudicial abuse of discretion is demonstrated." *Id.* (citation and internal quotation marks omitted). We similarly "review a district court's alimony determination for an abuse of discretion" and will not disturb its alimony ruling "as long as the court exercises its discretion within the bounds and under the standards [set by Utah appellate courts] and has supported its decision with adequate findings and conclusions." *Id.* ¶ 84 (citation and internal quotation marks omitted). In reviewing the trial court's decisions, "we will not set aside findings of fact, whether based on oral or documentary evidence, unless they are clearly erroneous, and we give due regard to the district court's superior position from which to judge the credibility of witnesses." *See id.* ¶ 121.

---

(…continued)

assertions of prejudice are unsupported, and he fails to identify with any measure of precision how bifurcation of the proceedings would have led to a different result. *See* Utah R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

¶8     To provide context for George's arguments, we begin with a brief summary of the terms of the Separation Agreement and the trial court's findings regarding its enforceability. We then turn to George's specific contentions regarding property division and alimony. Last, we consider his contention that the trial court's divorce decree produced an inequitable result.

A.     The Separation Agreement

¶9     George and Kylee executed the Separation Agreement in February 2010 when they were living apart and approximately sixteen months before Kylee filed for divorce. The parties entered the Separation Agreement "to confirm their separation" and to settle "their property rights and other rights, responsibilities, and obligations growing out of their marital relationship." The parties agreed that division of marital property as set forth in the Separation Agreement's provisions was "fair, reasonable and equitable," and they agreed that the Separation Agreement would "be binding on the parties." The parties also agreed that the Separation Agreement would be incorporated into any court order or divorce decree.

¶10    The trial court determined that the Separation Agreement was a valid and binding contract—a determination neither party contests on appeal. Because the Separation Agreement was enforceable, the trial court gave it "great weight," but the court also "assess[ed] whether its terms [were] fair and equitable." *See Pearson v. Pearson*, 561 P.2d 1080, 1082 (Utah 1977) ("The court need not necessarily abide by the terms of the [litigants'] stipulations, and, although such should be respected and given great weight, the court is not duty bound to carry over the terms thereof." (footnote omitted)); *see also Reese v. Reese*, 1999 UT 75, ¶ 25, 984 P.2d 987 ("[T]he general principle derived from our case law is that spouses . . . may make binding contracts with each other and arrange their affairs as they see fit, insofar as the negotiations are conducted in good faith . . . and do not

unreasonably constrain the court's equitable and statutory duties."). In so doing, the trial court interpreted the terms of the Separation Agreement, identified certain of the parties' assets as either marital or separate property, and entered findings supporting its division of property and its alimony award.

B.      Property Division

¶11     George now contends that the property "distribution made by the Court was not consistent with the Separation Agreement and was inequitable." Although he acknowledges that, in his words, "a property settlement agreement is not binding upon the trial court in a divorce action," he asserts that "the property division agreed to by the parties should not have been disturbed."

¶12     "[T]he overarching aim of a property division, and of the decree of which it and the alimony award are subsidiary parts, is to achieve a fair, just, and equitable result between the parties." *Dahl v. Dahl*, 2015 UT 79, ¶ 25 (citation and internal quotation marks omitted); *see also* Utah Code Ann. § 30-3-5(1) (LexisNexis Supp. 2017) (permitting courts to issue "equitable orders relating to" property in divorce cases). "Utah law presumes that property acquired during a marriage is marital property subject to equitable distribution." *Dahl*, 2015 UT 79, ¶ 26. "[M]arital property is ordinarily divided equally between the divorcing spouses . . . ." *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 13, 176 P.3d 476 (citation and internal quotation marks omitted). In contrast, separate property is generally composed of "premarital property, gifts, and inheritances," and ordinarily the "spouse bringing such . . . property into the marriage may retain it in the event of a divorce." *Dahl*, 2015 UT 79, ¶ 143 (omission in original) (citation and internal quotation marks omitted). Yet separate property "is not totally beyond a court's reach" and may be included as part of the marital estate in three circumstances: "when separate property has been commingled;

when the other spouse has augmented, maintained, or protected the separate property; and in extraordinary situations when equity so demands." *Lindsey v. Lindsey*, 2017 UT App 38, ¶ 33, 392 P.3d 968 (citation and internal quotation marks omitted). Having set forth these guiding principles for the distribution of property upon divorce, we now address George's specific contentions regarding the trial court's treatment of the financial accounts, certain real property, and loans.

1.      The Financial Accounts

¶13   George challenges the trial court's distribution of the couple's financial accounts, attacking the court's interpretation of the Separation Agreement and asserting that the court "erred in determining that the bank accounts were not sufficiently identified to justify . . . deeming them marital property." In George's view, the Separation Agreement "was not sufficiently ambiguous as to warrant the court's re-disposition of property already agreed-upon by the parties." In the alternative, he contends that even if the Separation Agreement's provision regarding the checking and savings accounts was unenforceable, the trial court nevertheless should have treated one particular checking account (the #400 account) as his separate property and should have awarded that account solely to him.

¶14   The Separation Agreement has a section identifying and assigning separate property to George and Kylee. It states that Kylee is entitled to the following separate property: "All home furnishings, computers, tvs, jewelry, and Honda 2007 Civic, checking and savings accounts, and 401K." It states that George is entitled to the following separate property: "Honda Ridgeline 2007 truck, checking and savings accounts and retirement pension." The Separation Agreement does not identify which of the parties' several checking and savings accounts each spouse would receive. At trial, George took the position that the parties' intent was for the majority of the accounts to be considered his

separate property and that their intent was evident in the plain language of the Separation Agreement. Kylee's position, on the other hand, was that the checking and savings account phrase was ambiguous and that she was fraudulently induced into signing the Separation Agreement as a whole.[3]

¶15    The trial court ultimately ordered the parties to split their checking and savings accounts equally. The court reasoned that because the parties "had numerous accounts many of which were in both of their names," the Separation Agreement's provision regarding the checking and savings accounts was not specific enough to be enforced. The court questioned whether the parties had reached a meeting of the minds concerning how to divide the financial accounts and also stated that the "lack of identification of any particular accounts renders this provision ambiguous." *See generally Lyngle v. Lyngle*, 831 P.2d 1027, 1029 (Utah Ct. App. 1992) ("A document is ambiguous if it is subject to two plausible constructions, or its terms are so incomplete they create confusion as to its meaning." (citation and internal quotation marks omitted)).

¶16    Based on the evidence presented, the court also found that the financial accounts were "acquired during the marriage and contain commingled funds"; that no accounts were "obviously the separate property of either [Kylee] or [George]"; and that "all of the parties' checking and savings accounts are marital property." The trial court thus concluded,

> In light of the parties' vastly opposed positions on their intent, and the fact that the Court has determined that the financial accounts are all marital property, the Court determines the most

---

3. The trial court rejected Kylee's attempt to void the Separation Agreement on the ground of fraudulent inducement.

fair and equitable approach, as well as the presumption under Utah law, is to split all of the financial accounts equally between the parties.

¶17    George has not demonstrated that the trial court erred in so concluding. To adequately brief an issue, an appellant's argument must contain his "contentions and reasons . . . with respect to the issues presented, . . . with citations to the authorities, statutes, and parts of the record relied on." Utah R. App. P. 24(a)(9) (2016).[4] An argument is inadequately briefed "when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *CORA USA LLC v. Quick Change Artist LLC*, 2017 UT App 66, ¶ 5, 397 P.3d 759 (citation and internal quotation marks omitted). Here, George does not present a reasoned argument explaining why the two instances of the phrase "checking and savings accounts" were unambiguous or definite enough to be enforced, and he offers no interpretation of the provision to support his assertion that it clearly identifies certain accounts as his. Instead, without offering an alternative interpretation of the provision, he simply contends that the parties understood what it meant and that he "presented undisputed evidence as to the meaning." But the court rejected these arguments when it concluded that the parties had "vastly different positions as to their intent with respect to the financial accounts" and when it declined to adopt George's proposal that the financial accounts should be deemed his separate property.

---

4. Since the time George filed his brief, rule 24 of the Utah Rules of Appellate Procedure has been amended and renumbered. The rule now provides that an appellant's argument "must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." Utah R. App. P. 24(a)(8).

¶18    As for George's alternative argument, he asserts that the #400 account was his separate property because he "acquired [it] before the marriage and maintained [it] separately from any commingled assets." The trial court did not accept this argument, instead concluding that the #400 account, along with all of the other financial accounts, was marital property. The court reasoned that any premarital property that George brought into the marriage in the #400 account was "commingled" and that he "intended to merge, commingle, gift and transmute any separate property into marital property." *See generally Dunn v. Dunn*, 802 P.2d 1314, 1321 (Utah Ct. App. 1990) (indicating that a spouse's separate premarital property may be included in the marital estate if it has "[lost] its separate distinction where the parties have inextricably commingled it into the marital estate, or where one spouse has contributed all or part of the property to the marital estate"). The trial court also reasoned that the parties expended marital funds on real estate and hard money loan ventures related to the #400 account and that Kylee's efforts during the marriage "assisted to augment, maintain or protect the property that perhaps initially was obtained through the assets [George] brought with him to the marriage." *See generally Lindsey v. Lindsey*, 2017 UT App 38, ¶ 35, 392 P.3d 968 (explaining that "a spouse's separate property may be subject to equitable distribution when the other spouse has by his or her efforts or expense contributed to the enhancement, maintenance, or protection of that property, thereby acquiring an equitable interest in it" (citation and internal quotation marks omitted)).

¶19    George has not shown that the trial court exceeded its discretion in subjecting the #400 account to equitable division. He conceded at oral argument that some evidence supported the trial court's findings, and he has not engaged with or shown clear error in the findings on this issue. *See Kimball v. Kimball*, 2009 UT App 233, ¶ 14, 217 P.3d 733 ("A trial court's factual determinations are clearly erroneous only if they are in conflict with the clear weight of the evidence, or if this court has a

definite and firm conviction that a mistake has been made." (citation and internal quotation marks omitted)). Moreover, George has not provided legal authority and reasoned analysis that might persuade this court to rule in his favor. *See supra* ¶ 17.[5]

### 2.      Real Property

¶20    George next asserts that ten lots of real property (the Lots) were his separate property that he should retain. The Separation Agreement identifies the Lots as real property that George owned "solely in his own name," and provides that the Lots were to "remain separate" property. At some point during the proceedings, the Lots were sold.

¶21    In fact, the trial court ultimately awarded George the Lots as his separate property, albeit in the form of the sale proceeds. As George recognizes, the trial court's post-trial order clarified and ordered that the proceeds from the sale of the Lots were awarded to George as his separate property per the terms of the Separation Agreement. We therefore fail to see error or discern how George was aggrieved by the trial court's decision in this regard.

### 3.      Loans

¶22    George also contends that the trial court "improperly ruled that $305,000 was part of the marital estate as 'loans'" and erred in requiring him to pay Kylee "the amount equal to one-half" of these loans. He further asserts that these loans were "already repaid," implying that the divided financial accounts contained the amounts representing the allegedly repaid loans.

---

5. George also asserts that if the financial accounts were marital property, then "those funds were not divided equitably." We address this argument in Part II.D.

¶23    The trial court found that at the time of trial the parties possessed some assets that they had acquired after executing the Separation Agreement. These assets included $305,000 in loans that the parties made to three individuals using funds from their financial accounts. Because the loans were held at the time of trial and were not accounted for by the Separation Agreement, the court determined that "the most fair and equitable distribution, as well as the presumption under Utah law, . . . is to split them equally."

¶24    George filed a post-trial motion, asserting that the loans had been made from his separate property and that the loans had been repaid. The trial court also allowed George to file supplemental briefing for the express purpose of providing him an opportunity to cite specific evidence admitted at trial in support of his motion. Ultimately, the trial court denied the motion. The court concluded that "the evidence at trial did not demonstrate that [the] loans were made from [George's] separate property"; rather, "the loans were made from funds that were commingled and were not segregated." The court also concluded that no evidence showed that the three indebted individuals had repaid the loans. The court noted that, although George cited his own deposition, the deposition was not offered or received as a trial exhibit and that the portion of the deposition published during George's testimony did not establish that the loans were repaid.

¶25    George's attack on the trial court's treatment of the loans is, at heart, a challenge to the factual findings. To demonstrate clear error in the trial court's factual findings, the appellant must "overcome[e] the healthy dose of deference owed to factual findings" by "identify[ing] and deal[ing] with [the] supportive evidence" and establishing a legal problem in that evidence. *State v. Nielsen*, 2014 UT 10, ¶¶ 40–41, 326 P.3d 645; *accord Taft v. Taft*, 2016 UT App 135, ¶ 19, 379 P.3d 890. A party challenging factual findings cannot persuasively carry his burden in this

respect "by simply listing or rehashing the evidence and arguments [he] presented during trial" or "by merely pointing to evidence that might have supported findings more favorable to [him]; rather, [he] must identify flaws in the evidence relied on by the trial court that rendered the trial court's reliance on it, and the findings resulting from it, clearly erroneous." *Taft*, 2016 UT App 135, ¶ 43.

¶26 Just as he did before the trial court and citing his own deposition and trial testimony, George asserts that the loans were made from separate funds and that the loans were repaid. But as the trial court noted, his deposition was not admitted into evidence, and the cited portions of his trial testimony do not support his assertion that the particular loans at issue were made from his separate property or that they were repaid. Moreover, George does not address the trial court's rationale for rejecting these same assertions made in his post-trial motion. *Cf. Duchesne Land, LC v. Division of Consumer Prot.*, 2011 UT App 153, ¶ 8, 257 P.3d 441 (explaining that an appellant must address the basis for the district court's decision to persuade the reviewing court that the district court has erred). As a result, George has not carried his burden of persuasion on appeal to show error in the trial court's decision regarding the loans.[6]

---

6. In connection with his argument about the loans, George briefly suggests that the trial court failed to provide adequate factual findings. But to preserve this issue for appeal, George had to object in the trial court "to the adequacy of the detail of" the court's factual findings. *In re K.F.*, 2009 UT 4, ¶¶ 60–64, 201 P.3d 985. He has not shown where in the record he alerted the trial court to the need to make additional findings. *See* Utah R. App. P. 24(a)(5)(A) (2016). Accordingly, George's challenge to the adequacy of the findings of fact is not preserved, and we do not further address it.

C.    Alimony

¶27    Next, George challenges the trial court's alimony award, contending that the court's ruling "did not follow the parties' agreement with regard to the monthly payments and/or lump sum award" and resulted in "an inequitable distribution of the parties' assets." George contends that, contrary to the parties' intent, the court "substituted its own contractual terms that the $400,000 lump sum payment was 'alimony' awarded to [Kylee] on top of the Court's distribution of the estate."

¶28    Under the terms of the Separation Agreement, George agreed to pay Kylee $2,000 per month as alimony beginning in March 2010. The Separation Agreement specifically states that the alimony provisions are "independent of" the property division provisions: "The provisions for the support, maintenance and alimony of Kylee are independent of any division or agreement for the division of property between the parties, and shall not for any purpose be deemed to be a part of or merged in or integrated with the property settlement of the parties." Additionally, the parties signed an addendum, which provides, "At any time either one of the parties may terminate the monthly alimony payments of $2000 with a lump sum cash payment of $400,000."

¶29    The trial court concluded that the parties' agreement regarding alimony was fair and equitable. The court specifically concluded that George was obligated to pay alimony of $2,000 per month to Kylee for up to twenty-four years,[7] unless and until

_____

7. The Separation Agreement does not provide a date on which alimony payments will end. Because Utah law does not permit alimony to be awarded for a duration longer than the marriage itself, the trial court ordered that George was obligated to pay alimony from March 2010 (the date the Separation Agreement

(continued…)

one of the parties elects the lump sum payment as provided for in the addendum to the Separation Agreement.[8] The court also stated that no evidence was presented that either party had made such an election. The court's findings indicate that George testified that his understanding was that Kylee's share of the property division was $400,000 and that, under the Separation Agreement, George was to pay Kylee that share as alimony at a

---

(…continued)
went into effect) for "up to 24 years" (the length of the parties' marriage). *See* Utah Code Ann. § 30-3-5(8)(j) (LexisNexis Supp. 2017) ("Alimony may not be ordered for a duration longer than the number of years that the marriage existed unless, at any time prior to termination of alimony, the court finds extenuating circumstances that justify the payment of alimony for a longer period of time.").

8. The trial court found that although George paid $2,000 per month in alimony from March 2010 through June 2011, he did not pay alimony from July 2011 through July 2015. Accordingly, the court found that George owed Kylee $96,000 in past due alimony. George asserts on appeal that the $96,000 calculation is in error, relying on his assertion that Kylee "withdrew $90,000 from the bank account in June 2011" when she filed for divorce and that she "withdrew this sum as prepaid 'alimony'—or a portion of her lump sum payment due to her under the separation agreement." George's reference to the $90,000 withdrawal appears to pertain to the trial court's finding that Kylee had withdrawn $90,000 from a marital account and that George was entitled to half of that amount as his share of that marital property. Given that the trial court accounted for Kylee's $90,000 withdrawal by deducting $45,000 from the final sum of marital assets to be distributed to Kylee, George has not shown error in the trial court's $96,000 calculation of the past due alimony.

rate of $2,000 per month or a lump sum payment option of $400,000. The court found that George's testimony on this point was "in direct conflict with the plain language" of the Separation Agreement.

¶30 On appeal, George's challenge to the alimony award is essentially a reassertion of his view that, per the Separation Agreement, Kylee's share of the property division was $400,000 and that he was to pay that share to Kylee as alimony at a rate of $2,000 per month or a lump sum payment option of $400,000. In so arguing, George maintains that the $2,000 monthly payment or the alternative lump sum $400,000 payment "represented [Kylee's] property distribution."

¶31 But the trial court's alimony award was consistent with the Separation Agreement's plain language, and George's argument to the contrary is not. Article 4 of that agreement expressly provides that its "provisions for the support, maintenance and alimony of Kylee are *independent of any division or agreement for the division of property*." (Emphasis added.) Because the $2,000 per month alimony payments and the alternative $400,000 lump sum under the Separation Agreement are "independent of" the property division and therefore cannot be "part of" the parties' property settlement, George's alimony payment and the alternative lump sum payment cannot represent Kylee's share of the property distribution.

¶32 George also takes issue with the trial court's analysis under Utah Code section 30-3-5(8), which establishes the factors that a court shall consider in determining alimony. The trial court decided that even though the parties had agreed upon alimony and had not addressed the requisite statutory factors, it would analyze those factors for alimony "to ensure the parties' agreed upon award [was] fair and equitable." The court then analyzed, among other things, the financial needs and conditions of the recipient spouse, the recipient spouse's earning capacity,

and the ability of the payor spouse to provide support. *See* Utah Code Ann. § 30-3-5(8)(a) (LexisNexis Supp. 2017) (laying out the statutory factors for an alimony determination).

¶33 George attacks the trial court's analysis regarding Kylee's needs and his ability to provide support, asserting that the evidence did not support its analysis of these two factors. But to successfully challenge a trial court's factual findings on appeal, the appellant must show that the findings are "in conflict with the clear weight of the evidence" or convince this court that a mistake has been made. *See Kimball v. Kimball*, 2009 UT App 233, ¶ 14, 217 P.3d 733 (citation and internal quotation marks omitted). George has not carried his burden in this regard. He does not address the trial court's specific alimony findings or attempt to deal with the evidence in support of them. Because George asks us to reweigh the evidence and fails to demonstrate a legal problem in the evidence, he has not shown error in the trial court's findings regarding the alimony factors.[9] *See Taft v. Taft*, 2016 UT App 135, ¶¶ 19, 43, 379 P.3d 890.

D.     The Equities of the Divorce Decree

¶34     George further contends that the trial court's order to equally divide all of the couple's financial accounts *plus* the alimony award resulted in an inequitable divorce decree. According to George, the decree awarded Kylee three-quarters of the total marital estate.

¶35     George has not shown that the trial court exceeded its discretion in dividing the assets and awarding alimony. As

---

9. To the extent George suggests that the property division should have been given additional weight in the court's analysis of the alimony factors, he has not developed a reasoned and supported analysis, and we do not consider the argument further. *See supra* ¶ 17.

previously stated, trial courts have considerable discretion over property division and alimony, and their primary objective is to accomplish a just, fair, and equitable result between divorcing spouses. *See Dahl v. Dahl*, 2015 UT 79, ¶¶ 25, 119. Here, the trial court supported its conclusion that the divorce decree was equitable by explaining that, under its terms, the parties would retain their individual retirement benefits, they would each receive about half of the personal property, and they would divide the financial accounts equally. In addition, the court explained that while George would retain the proceeds from the sale of the Lots as his separate property, Kylee would receive $2,000 per month in alimony or, alternatively, a $400,000 lump sum payment. In challenging the equitable considerations of the divorce decree, George largely overlooks the fact that he retained the sale proceeds from the Lots and his pension. And although George disagrees with the result reached by the trial court and with what he views as deviations from the Separation Agreement, he has not persuaded us that the trial court exceeded its discretion.

### III. Motion for a New Trial

¶36    Next, George contends that the trial court committed legal error and improperly denied him a new trial. He cites rule 59(a)(1) of the Utah Rules of Civil Procedure, which states that a new trial may be granted for any "irregularity in the proceedings of the court, jury or opposing party, or any order of the court, or abuse of discretion by which a party was prevented from having a fair trial." He also implicitly relies on rule 59(a)(3), which allows for a new trial due to "accident or surprise that ordinary prudence could not have guarded against." Utah R. Civ. P. 59(a)(3).

¶37    George has not preserved these issues for appeal. "An issue is preserved for appeal only if it was 'presented to the trial court in such a way that the trial court [had] an opportunity to

rule on [it].'" *Wohnoutka v. Kelley*, 2014 UT App 154, ¶ 4, 330 P.3d 762 (alterations in original) (quoting *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801). "Issues that are not raised at trial are usually deemed waived." *438 Main St.*, 2004 UT 72, ¶ 51. Here, George filed a post-trial motion expressly under rule 59(a)(5), (6), and (7), and rule 60(b)(1) and (6). But because the motion did not state any ground for relief under rule 59(a)(1) and (3), George did not give the trial court an opportunity to rule on the issues he now raises on appeal. As a result, he has waived his argument that the trial court erred in denying his motion for a new trial.[10] *See Meyer ex rel. Meyer v. Bartholomew*, 690 P.2d 558, 559 (Utah 1984) (per curiam) (rejecting an argument under rule 59(a)(3), where the appellant had filed a post-trial motion under a different subsection of rule 59(a), and where the rule 59(a)(3) argument "was never brought to the attention of the trial court" and "was asserted for the first time on appeal").

## IV. Attorney Fees

¶38   Both parties request an award of attorney fees. George asks for his fees incurred in the trial court, and Kylee asks for her fees incurred in defending this appeal.

---

10. In any event, George offers only conclusory statements that "the interests of justice are served by a fair adjudication on accurate and correct calculations" and that the trial court "should be instructed to adhere" to the Separation Agreement. But he does not offer reasoned analysis connecting these statements to rule 59, nor does he further explain how or why he should prevail on these issues. *See* Utah R. App. P. 24(a)(9) (2016) (setting out an appellant's briefing obligation). As a result, George's challenge to the denial of his motion for a new trial also fails because he has not adequately briefed it.

A.     George's Request for Attorney Fees in the Trial Court

¶39     George contends that the trial court abused its discretion by not awarding attorney fees to him. He argues that such an award was justified "[b]ased on the actions of [Kylee]" and the fact that the trial court rejected Kylee's attempt to void the Separation Agreement.

¶40     The trial court declined to award attorney fees to either party and instead ordered each party to bear his or her own fees. The court determined that both parties were able to bear their own fees based upon their financial condition and the distribution of marital property. Accordingly, the trial court determined that an award of fees was not warranted under Utah Code section 30-3-3 or rule 102 of the Utah Rules of Civil Procedure.

¶41     "In Utah, attorney fees are awardable only if authorized by statute or by contract." *Dahl v. Dahl*, 2015 UT 79, ¶ 168 (citation and internal quotation marks omitted). Utah Code section 30-3-3(1) permits a court to award attorney fees and costs to a party in a divorce proceeding "to enable the [receiving] party to prosecute or defend the action." Utah Code Ann. § 30-3-3(1) (LexisNexis 2013); *accord* Utah R. Civ. P. 102(a). "Such an award must be based on evidence of the receiving spouse's financial need, the payor spouse's ability to pay, and the reasonableness of the requested fees." *Dahl*, 2015 UT 79, ¶ 168 (footnote, citation, and internal quotation marks omitted); *see also* Utah R. Civ. P. 102(b) (providing that the court may grant a motion filed pursuant to Utah Code section 30-3-3(1) if the court finds that "the moving party lacks the financial resources to pay the costs and fees," "the non-moving party has the financial resources to pay the costs and fees," "the costs and fees are necessary for the proper prosecution or defense of the action," and "the amount of the costs and fees are reasonable"). The decision whether to award attorney fees pursuant to Utah Code

section 30-3-3(1) "rests in the sound discretion of the district court," and we therefore "review the district court's award or denial of fees for abuse of discretion." *Dahl*, 2015 UT 79, ¶ 168.

¶42  George has not established that the trial court exceeded its discretion in declining to award attorney fees to him. George's argument for fees does not address the application of the statutory standard for awarding fees in this context. Instead, George relies on the fact that Kylee unsuccessfully argued to invalidate the Separation Agreement, and he relies on other unspecified "actions of [Kylee]."[11] This argument falls short, however, because it does not show that George should have been awarded fees "to enable [him] to prosecute or defend the action," *see* Utah Code Ann. § 30-3-3(1), or show evidence of his financial need, Kylee's ability to pay, and the reasonableness of the requested fees, *see Dahl*, 2015 UT 79, ¶ 168. Accordingly, we cannot say that the trial court exceeded its discretion in ordering both parties to bear their own attorney fees.[12]

---

11. Although George claims entitlement to fees based on Kylee's failed arguments and actions, he does not claim that her positions were frivolous or asserted in bad faith, or that attorney fees should have been awarded on such a basis. *See generally* Utah Code Ann. § 78B-5-825(1) (LexisNexis 2012) (allowing the trial court in civil actions to award attorney fees to a prevailing party "if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith").

12. In rejecting George's request for attorney fees, the court also determined that both parties prevailed in part. Although George's briefing alludes to this finding, that finding is not relevant to the fees analysis in this case, because this is an action to establish, not to enforce, an order dividing property. *See*

(continued…)

B.      Kylee's Request for Attorney Fees on Appeal

¶43     Kylee asks this court to award her attorney fees incurred on appeal pursuant to rule 33 of the Utah Rules of Appellate Procedure. She asserts that such an award is warranted because "George's appellate brief is frivolous"—a position based on her assertions that George "failed to preserve issues, he did not marshal the evidence, and he invited error."

¶44     Rule 33 provides that if an appellate court determines that an appeal "is either frivolous or for delay, it shall award just damages, which may include single or double costs, as defined in Rule 34, and/or reasonable attorney fees, to the prevailing party." Utah R. App. P. 33(a). Our supreme court has instructed that "parties seeking attorney fees under rule 33 face a high bar" and that the sanction for bringing a frivolous appeal is only applied in "egregious cases, lest the threat of such sanctions should chill litigants' rights to appeal lower court decisions." *Porenta v. Porenta*, 2017 UT 78, ¶ 51 (citation and internal quotation marks omitted). Although George's arguments are ultimately unavailing, we do not agree that his appeal merits such a sanction and therefore decline to award Kylee her fees on appeal.

---

(…continued)
*Goggin v. Goggin*, 2013 UT 16, ¶ 32 n.15, 299 P.3d 1079 (stating that, in an action to enforce an order of division of property, section 30-3-3(2) "permits a court to award fees 'upon determining that the party substantially prevailed upon the claim or defense'" (quoting Utah Code section 30-3-3(2))); *Robinson v. Robinson*, 2016 UT App 32, ¶ 45, 368 P.3d 147 (explaining that the requirements for an award of fees incurred in *establishing* court orders differ from those for an award of fees incurred in *enforcing* court orders).

CONCLUSION

¶45    In summary, George has failed to show that the trial court exceeded its discretion in refusing to bifurcate the trial. George has also failed to show that the trial court's property distribution was inequitable or that the trial court otherwise exceeded its discretion in dividing property and awarding alimony. Finally, George failed to preserve his claim that the court erred in denying his motion for a new trial, and he has failed to show error in the trial court's denial of his request for attorney fees. Accordingly, we affirm.

───────────