2017 UT App 114

## THE UTAH COURT OF APPEALS

PAUL R. SAUER II,
Appellant,
*v.*
PAULINE L. SAUER,
Appellee.

Opinion
No. 20150952-CA
Filed July 13, 2017

Third District Court, Salt Lake Department
The Honorable Su J. Chon
No. 134902556

David Maddox, Attorney for Appellant

Pauline L. Sauer, Appellee Pro Se

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES J. FREDERIC VOROS JR. and JILL M. POHLMAN
concurred.

CHRISTIANSEN, Judge:

¶1    Paul R. Sauer II and Pauline L. Sauer married in 1987 and
separated in 2004. Paul filed for divorce in 2013. After a bench
trial, the court issued a decree of divorce in November 2015, in
which it awarded Pauline half of Paul's retirement benefits and
alimony of $576 per month and ordered Pauline to reimburse
Paul approximately $1,438 for moving expenses and utility bills.
Paul appeals, contending that the trial court abused its discretion
in weighing the evidence, by imputing Pauline's needs, and by
entering conclusions not supported by the evidence. We affirm.

¶2    Paul first contends that the trial court "abused its
discretion when it stated that [he] failed to meet his burden of
proof when offering evidence relating to debt and property

distribution." Paul notes that the standard of proof applicable to civil actions is the preponderance of the evidence. *See Morris v. Farmers Home Mutual Ins. Co.*, 500 P.2d 505, 507 (Utah 1972). Paul then asserts that because he "provided copious amounts of evidence in testimony and exhibits" that "went un-refuted by [Pauline]," the court abused its discretion when it determined that he had not met his burden of proof. In essence, Paul's argument is that because he presented uncontested evidence regarding the value of certain items, the trial court was required to find that evidence credible.

¶3     At trial, Paul entered into evidence a list of items he claimed Pauline had lost. The list included his estimates as to the value of each item. Pauline denied losing the items and did not present competing evidence of those items' value.

¶4     The court rejected Paul's estimates of the values of the items because he "did not testify that he had any experience in evaluation or training in that area." But the court also found that Paul had not demonstrated that Pauline was responsible for losing the items. Specifically, the court explained it was troubled that, although Paul "voluntarily stored" at the homes of acquaintances some of the items that later went missing, Paul nevertheless sought "to hold [Pauline] responsible for the loss of all of the personal property" on the list. The court also noted that Paul had never reported the loss of any property to law enforcement. The court ultimately found Paul's testimony "not credible as to why he would voluntarily store his property at other people's homes and then blame the resulting loss on [Pauline]."

¶5     Thus, the record shows that the trial court considered testimony by both Paul and Pauline before finding that Paul had failed to demonstrate that Pauline caused the loss of the listed items. Paul does not challenge that finding. Because the court rejected Paul's claim that Pauline was responsible for the loss of

the items, it is irrelevant whether the court correctly valued them.[1]

¶6      Paul also asserts that the court's "pattern of disbelief" regarding his testimony and the evidence he proffered "is a clear abuse of discretion." But we give great deference to a trial court's determinations of credibility "based on the presumption that the trial judge, having personally observed the quality of the evidence, the tenor of the proceedings, and the demeanor of the parties, is in a better position to perceive the subtleties at issue than we can looking only at the cold record." *See State v. Calliham*, 2002 UT 87, ¶ 20, 57 P.3d 220. Consequently, in "all actions tried upon the facts without a jury, findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Hale v. Big H Constr. Inc.*, 2012 UT App 283, ¶ 9, 288 P.3d 1046 (quoting Utah R. Civ. P. 52(a) (2012)) (brackets, ellipses, and internal quotation marks omitted). A court may well find that several pieces of evidence presented by a single party are not credible; such a "pattern of disbelief" does

---

1. Similarly, the court rejected Paul's claim regarding the value of a truck. Paul claimed that the truck was worth $1,900 because he had received an offer to buy it for "$1,000 solely for the engine." He also testified that he believed Pauline had "sold it to someone." The court found that the only evidence of the truck's value was the offer to buy it for $1,000 and consequently fixed its value at $1,000. But the court then found that there was no credible evidence "as to what happened to the truck" and therefore refused to treat it as sold. On appeal, Paul asserts that the trial court "found [his testimony] not credible because he did not provide the [Kelley Blue Book] valuation of the truck." However, any dispute regarding the valuation of the truck is immaterial when the court did not find credible the claim that it had been sold.

not, standing alone, prove clear error or otherwise constitute grounds for withdrawing the due regard we owe to the trial court. And, here, the trial court was not required to believe Paul simply because he presented more evidence than Pauline or because Pauline did not directly contradict his proffered testimony. *See, e.g.*, *Anderson v. State Farm Fire & Cas. Co.*, 583 P.2d 101, 104 (Utah 1978) ("The testimony of a party . . . is not conclusive, *even if it is not contradicted* . . . . [The party's] testimony is to be given such weight and credibility as the trier of fact finds reasonable under the circumstances." (emphasis added)); *Fullmer v. Fullmer*, 2015 UT App 60, ¶ 25, 347 P.3d 14 ("Determinations regarding the weight to be given to the testimony of witnesses, including expert witnesses, are within the province of the finder of fact, and we will not second guess a court's decisions about evidentiary weight and credibility if there is a reasonable basis in the record to support them." (brackets, citation, and internal quotation marks omitted)).

¶7      Because the trial court found that Paul failed to prove that Pauline lost the items, his complaint that the trial court improperly rejected his valuation of those items is irrelevant. Even if the trial court had found that Pauline lost the items, Paul has failed to demonstrate that the court's credibility determination was clearly erroneous, and the nature of appellate review would require us to defer to that credibility determination. *See id.*; *see also* Utah R. Civ. P. 52(a)(4) ("Findings of fact . . . must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the credibility of the witnesses."); *Dahl v. Dahl*, 2015 UT 79, ¶ 121 (same, in the context of a marital property distribution).

¶8      Paul next contends that the trial court "abused its discretion when it awarded alimony, mistakenly relying on *Dahl v. Dahl* to reject the financial statement figures submitted by [Pauline] and impute its own on her behalf." Specifically, Paul argues that the trial court was bound by Pauline's testimony, or

lack thereof, regarding Pauline's needs and her living expenses related to her housing costs. Paul asserts that, whereas "*Dahl* explicitly states that courts may impute figures [only] when there is insufficient evidence," "[t]here is no lack of evidence in this case."

¶9　　*Dahl* did not hold, as Paul claims, that imputing an amount for an alimony factor is improper whenever evidence pertaining to that factor has been presented. Rather, *Dahl* instructs that the court may impute a reasonable amount for an alimony factor when no *credible* evidence regarding that factor has been presented. *See Dahl*, 2015 UT 79, ¶¶ 115–16 (noting that "there [was] insufficient evidence of one of the statutory alimony factors" due to a party's "failure to provide credible evidence of her financial need," and thus that the trial court could impute figures).[2] When a party obviously underestimates (as here) or overestimates (as is more common) his or her living expenses, the trial court is not limited to awarding either the reported amount or nothing. Instead, the dearth of credible evidence regarding a particular claim simply renders the quantum of evidence as to that claim insufficient.

¶10　　Here, the trial court reasonably rejected Pauline's estimate of $400 per month in housing expenses because, "[a]lthough [Pauline] lives in a trailer on a friend's property, it is unknown

---

2. In *Dahl*, the supreme court ultimately held that the district court's failure to impute an amount for Ms. Dahl's needs was within its discretion. *Dahl v. Dahl*, 2015 UT 79, ¶¶ 116–17. While the district court could have imputed an amount, it was not required to do so, because it "awarded Ms. Dahl over $1.5 million in marital property" which was "sufficiently large . . . to support a comfortable standard of living." *Id.* ¶ 116.

how long a person can survive on the good nature of a friend."[3] In other words, the court found that Pauline's estimate of her current housing expenses was not relevant to determining her reasonable housing needs going forward.[4] This finding left the court without any specific evidence of Pauline's housing needs that was both credible and relevant. Paul has not claimed, let alone shown, that the finding was clearly erroneous. *See Dahl*, 2015 UT 79, ¶ 121; *see also Anderson*, 583 P.2d at 104. Once the court determined that there was no evidence that was both credible and relevant regarding Pauline's reasonable housing needs, it was appropriate for the court to impute a reasonable amount based on other evidence provided by the parties. *See Dahl*, 2015 UT 79, ¶ 116. The court found that Paul's claimed housing need of $975 was reasonable and thus that "[i]t is reasonable to impute $975 as a rental payment for [Pauline]."

---

3. This determination makes conceptual sense. In the aftermath of a separation, a party may temporarily return to his or her parents' home, shelter with friends, or become homeless and thus incur no actual housing expenses. This does not require a court to find that the party has no reasonable housing expenses; rather, the court may consider what constitutes a reasonable rental or mortgage payment in the relevant area for housing similar to the housing previously shared by the parties. *See* Utah Code Ann. § 30-3-5(8)(e) (LexisNexis 2013) ("As a general rule, the court should look to the standard of living, existing at the time of separation, in determining alimony[.]").

4. One of the purposes of alimony is to ensure that "divorcing spouses both retain sufficient assets to avoid becoming a public charge." *See Dahl*, 2015 UT 79, ¶¶ 25, 111. Here, Pauline's current housing expenses were essentially subsidized through the charity of a member of the public. It was therefore appropriate for the court to consider Pauline's reasonable unsubsidized needs rather than her actual subsidized expenses.

There was no claim or evidence that Paul's and Pauline's reasonable housing needs differed or were wildly different than the housing they enjoyed during their marriage.[5] We therefore see no impropriety in the trial court's decision to impute housing needs to Pauline in the same amount as Paul had claimed was reasonable for him.

¶11    A similar example may be found in the court's overall findings with respect to the alimony factors. Ultimately, the court found that the evidence presented by Pauline (to the effect that her monthly income was $189 and her monthly housing expense was $400) was not credible relevant evidence of her reasonable earning capacity and living expenses, and it therefore imputed figures for both her income and housing ($1,517 and $975, respectively). Although Pauline's financial declaration reported that her only income was $189 per month in food stamps at the time of trial, the court took into account whether she could work and what she could reasonably earn. Based on Pauline's prior earnings, the court imputed $1,517 per month of income to her. But if we were to adopt Paul's reading of *Dahl*— that any evidence regarding an alimony factor precludes imputation by the court—we would be forced to conclude that the trial court could not have imputed income to Pauline, because she presented evidence, albeit not credible evidence, that her income was $189. *Dahl*, as we read it, does not require this result.

---

5. Thus, failing to impute reasonable housing expenses for Pauline could have indicated that the district court did not comply with its charge in fashioning an alimony award; i.e., "to enable the receiving spouse to maintain as nearly as possible the standard of living enjoyed during the marriage and to prevent the spouse from becoming a public charge." *See Dahl*, 2015 UT 79, ¶ 111 (emphasis, citation, and internal quotation marks omitted).

¶12    Paul also claims that Pauline "stated she was not asking for Alimony" and that "her financial declaration indicated no need for alimony." Paul fails to provide citations to the record for either of these assertions. *See* Utah R. App. P. 24(a)(9) (requiring an appellant's argument to contain "citations to the . . . parts of the record relied on"). Paul thus fails to refer us to any of the evidence he argues should have prevented the court from imputing Pauline's financial figures. Our review of the parts of the record to which Paul might be referring indicates that Pauline rejected "alimony" only until she became aware of what the word meant. Once the word was explained, Pauline stated that, "as far as the money, I'm entitled to it. I'm entitled to something" and that "I just want what's fair" because "I deserve it." And Paul's assertion that Pauline's financial declaration showed no need for alimony is belied by that very declaration: according to it, Pauline was unemployed, had no savings, received $189 per month in public assistance, and had monthly expenses totaling $615. We therefore cannot agree with Paul that the trial court's finding that Pauline had unmet needs was clearly erroneous.

¶13    Paul's third contention is that the trial court "abused its discretion when it made conclusions not found in the evidence." Specifically, he asserts that the court's findings that he had been the "sole source of family income" and that Pauline "had no access to marital funds during the separation of the parties" are "patently false." He describes testimony by both himself and Pauline, but fails to provide record citations to that testimony or to provide record citations identifying the parts of the trial court's findings with which he takes issue. *See* Utah R. App. P. 24(a)(9).

¶14    We will not take it upon ourselves to search the record for testimony that might support Paul's arguments. *See, e.g.*, *Wohnoutka v. Kelley*, 2014 UT App 154, ¶ 6, 330 P.3d 762 ("An appellate court should not be asked to scour the record to save an appeal by remedying the deficiencies of an appellant's

brief."). In any event, even if such testimony exists in the record, the trial court's failure to credit it would have been within its discretion to determine the respective credibility of the parties. *See, e.g., supra* ¶ 6. Paul has done nothing to show that disbelieving any such evidence would have been clearly erroneous or an abuse of the court's discretion. We reiterate that, following a bench trial, the court's factual findings will be sustained on appeal unless the appellant demonstrates that they are "so lacking in support as to be against the clear weight of the evidence," *see 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 69, 99 P.3d 801 (citation and internal quotation marks omitted); this deference naturally extends to determinations of credibility.

¶15     We conclude that Paul has not demonstrated clear error in the trial court's findings. Accordingly, we affirm the trial court's judgment.

——————