**2021 UT App 20**

# THE UTAH COURT OF APPEALS

REBECCA ELLEN ALLEN,
Appellee,
*v.*
KENT DARIUS ALLEN,
Appellant.

Opinion
No. 20190369-CA
Filed February 25, 2021

Third District Court, Salt Lake Department
The Honorable Amber M. Mettler
No. 154906438

Sara Pfrommer and Kathleen McConkie, Attorneys
for Appellant

Russell Yauney, Attorney for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES GREGORY K. ORME and DAVID N. MORTENSEN concurred.

POHLMAN, Judge:

¶1     Kent Darius Allen appeals the district court's supplemental divorce decree in his divorce from Rebecca Ellen Allen. Kent[1] contends that the court erred in finding him in contempt and in its determinations regarding alimony, child support, and child custody. We reject his arguments and affirm.

---

1. Because the parties share the same last name, we refer to each by their first name, with no disrespect intended by the apparent informality.

BACKGROUND

¶2      Kent and Rebecca were married in 2004 and have five minor children. They separated in September 2014, when Rebecca moved to Utah with the children and Kent stayed in Texas. During this time, Rebecca worked part-time and provided full-time care for the children, while Kent did not work but received disability payments based on a 100% disability rating from the United States Department of Veterans Affairs (VA).

¶3      Rebecca filed for divorce in Utah in October 2015. Kent moved to Utah in the spring of 2016. Early in the litigation, in July 2016, Rebecca moved for an award of half of retroactive benefits Kent received from the VA. Rebecca claimed she was entitled to $56,171 of those benefits as rehabilitative spousal support. In responding to the motion, Kent filed a declaration in which he did not dispute receipt of the VA benefits. And in his August 2016 financial declaration, Kent acknowledged receiving around $89,900 as a "VA Disability Settlement minus attorney fees."

¶4      A domestic relations commissioner conducted a hearing in August 2016. The commissioner recommended, among other things, that Kent and Rebecca have temporary joint legal custody of their children and that Rebecca have temporary physical custody. The commissioner also recommended that Kent pay Rebecca $44,500 from the VA benefits and around $1,200 in monthly child support. These recommendations were memorialized in a temporary order entered and counter-signed by the district court in October 2016 (the Temporary Order).

¶5      Kent objected to the Temporary Order. The district court held a hearing on November 3, 2016, in which it overruled the objection and adopted the commissioner's recommendation. It also ordered Kent to pay Rebecca her share of the VA benefits "within 30 days."

¶6    On December 9, 2016, Rebecca moved for an order to show cause, asserting, among other things, that Kent was in contempt for not complying with the court's order to pay her portion of the VA benefits. Rebecca thus asked for a judgment against Kent in the amount of $44,500. After a hearing, the commissioner entered an order certifying the issue of contempt for Kent's "failure to pay the spousal support award of [$44,500]" as required by the Temporary Order. The commissioner's order also stated that a "judgment in the amount of [$44,500] for spousal support arrears shall enter for the period of October 28, 2016, through March 2, 2017" (the Judgment).[2] The district court counter-signed the Judgment.

¶7    In May 2017, Rebecca filed another motion for an order to show cause, asserting that Kent should be held in contempt for failing to pay child support between December 2016 and April 2017. Kent responded that he had already paid $11,294 of his social security benefits to Rebecca and that those funds covered his child support obligation for the time period at issue as well as for four additional months. After hearing argument, the commissioner certified the issue of Kent's alleged contempt. The commissioner also ordered entry of judgment against Kent for $4,792 in past-due child support from December 2016 through May 2017. The court counter-signed the order entering judgment for $4,792.

¶8    Rebecca filed yet another motion for an order to show cause in October 2017, this time asserting that Kent had not paid child support from June to September 2017. After a hearing, the

---

2. The Judgment was "inadvertently entered in the amount of $45,000 instead of the $44,500 included in the Temporary Order and requested by [Rebecca] in her motion for order to show cause." The court ultimately modified the Judgment to the correct amount of $44,500.

commissioner certified the contempt issue and awarded judgment to Rebecca for $4,722 in past-due child support for the months of June through November 2017. The court counter-signed this order. Consequently, Kent had accumulated judgments against him totaling $54,014 for unpaid child support and retroactive spousal support.

¶9    Meanwhile, Kent filed various motions in which he argued that the division of his VA benefits, as ordered in the Temporary Order, was impermissible under federal law and that the $44,500 Judgment should be vacated. The commissioner had certified the issue for trial, but before trial, the district court concluded that the VA benefits can be used for spousal support and, therefore, there was no basis to vacate the Judgment.

¶10    The court entered a bifurcated divorce decree in August 2017. The issues of child support, custody, and contempt were tried to the bench in 2018. Additionally, at trial, Kent once again argued that the Judgment should be vacated. He proposed "two ways to fight that judgment." First, he renewed his argument that his VA benefits were beyond the court's reach under federal law. Second, he objected to characterizing the $44,500 award in the Judgment as spousal support because "the court has engaged in none of the analysis required to determine a reasonable amount for spousal support or to make such [an] award." As for Rebecca, she clarified that she was not asking for "future spousal support" but that she "expected that judgment to be enforced."

¶11    Rebecca and Kent each testified at trial. Notably, the court found Rebecca "to be highly credible," while it found Kent "not to be credible" based on his "testimony, conduct, and a series of inconsistencies."

¶12    With regard to the Judgment, the court disagreed with Kent's argument that it was erroneous for $44,500 in spousal

support to remain in effect unless the court conducted an analysis of Rebecca's needs and his ability to pay. It explained,

> There was a court order *requiring* [Kent] to pay [Rebecca] $44,500. [Kent] did not do so. Judgment was, therefore, appropriately entered against [Kent]. This Court need not undergo any sort of analysis concerning the parties' current financial needs or [Kent's] ability to pay in order to permit the judgment to remain in effect.

The court also decided, in the alternative, that "[e]ven if . . . such an analysis was required," Kent "had the ability to pay and that the needs analysis at the time of the hearing on the [motion] for temporary orders supported the $44,500 award to [Rebecca] and subsequent judgment against [Kent]." The court thus proceeded to compare, albeit briefly, Kent's and Rebecca's incomes and assets.

¶13 The court evaluated Rebecca's assertion that Kent was in contempt for not paying the $44,500 from the VA benefits and not paying child support from December 2016 through September 2017. As an initial matter, the court determined that the Temporary Order requiring those payments was lawful. Then, in evaluating contempt, the court first found that Kent had the ability to comply with the Temporary Order at the time it was entered and had the present ability to comply with it. In support of this finding, the court rejected Kent's assertion that he had spent all the VA benefits (nearly $90,000). The court also found that despite Kent's "disability rating and the fact that he has not held a regular job in a number of years, the evidence at trial showed that [Kent] is physically and mentally able to work, yet he chooses not to." The court further found that Kent had "access to significant financial support from his family which support could be used to help" Kent obtain employment or pay the outstanding amounts he owed. Second, the court found that

Kent undisputedly "had knowledge of all the Court's orders requiring him to pay [Rebecca] $44,500 from his VA past-due benefits and to pay child support." Third, the court found that Kent had "deliberately chose[n] not to comply" with the orders when he "personally disagree[d]" with them but was "aware—at all times—of the Court's orders and [its] repeated rejections of his arguments."

¶14 The court thus held Kent in contempt, finding "beyond a reasonable doubt that, at all times, [Kent] knew what was required of him, had the ability to comply, and intentionally refused to do so."[3] Indeed, the court found that his "disregard of the Court's orders—including the multiple times the Court has rejected [his] arguments—was willful, deliberate, and intentional."

¶15 As a sanction for his contempt, the court ordered Kent jailed for ten days, which sentence could be purged if Kent made certain payments toward child support and spousal support within sixty days and continued to make specified monthly payments thereafter. Additionally, the court ordered Kent to pay Rebecca's attorney fees incurred "in prosecuting the request for entry of judgment and motions for contempt."

---

3. Given that the court's purpose in entering the contempt finding was "to vindicate [its] authority by punishing [Kent] for his willful disobedience of the Court's previous orders," the contempt proceeding was criminal in nature and required that Kent's contempt meet the higher standard of beyond a reasonable doubt rather than the lower civil standard. *See Dickman Family Props., Inc. v. White*, 2013 UT App 116, ¶ 2, 302 P.3d 833 ("The characterization of a contempt proceeding determines the applicable standard of proof: criminal contempt must be proven beyond a reasonable doubt; civil contempt must be proven by clear and convincing evidence.").

¶16   The district court also awarded Rebecca sole physical and legal custody of the minor children, while Kent was awarded parent-time. In making this decision, the court considered several factors bearing on the best interests of the children. First, it found that the parties' past conduct and moral standards favored Rebecca. It reasoned that Kent "testified untruthfully" and had "shown contemptuous disregard of the Court's orders," demonstrating that he was "willing to and ha[d] willfully disobeyed the law." In the court's view, this "type of conduct suggest[ed] questionable parenting, at best." The court also reasoned that Kent's "refusal—for years—to pay the spousal support award or the child support previously ordered . . . while [Rebecca] was struggling to provide for herself and the [children] demonstrate[d] a substantial indifference towards" the children. Although Kent claimed that he took care of the children "in other ways—not just financially, but physically, emotionally, and spiritually," the court discredited his testimony on this point.

¶17   Next, the court factored in which parent was the primary caretaker and concluded that this factor also favored Rebecca, especially given that she undisputedly had been the children's primary caretaker since the couple separated in September 2014. In considering this factor, the court found that Kent had "*no* in-person contact at all with the children" for over a year after they moved to Utah despite his financial ability to see the children in person. The court further found that the children were "well-cared for" and "flourishing with [Rebecca] as their primary caretaker" and that even after Kent moved to Utah, he had displayed "remarkably limited involvement" in the children's lives. Next, the court considered the factor of the children's bond with the parents. While the court did not find Kent's testimony that he had "active involvement and participation" in the children's lives to be credible, the court found that the evidence concerning Rebecca's "strong relationship with the [children] was credible and

overwhelming." The court then weighed the factor of which parent was most likely to act in the children's best interests in favor of Rebecca. The court based this determination on its findings that Rebecca "went out of her way not to speak negatively about" Kent at trial but that Kent made "accusations and insinuations" that Rebecca was an inattentive parent.

¶18   The court considered additional factors, including that the parties "have generally been able to cooperate with each other" even though Kent was "often unreliable." It found that Kent was "less emotionally stable" than Rebecca and that "[Kent]—despite not being employed or in school—[had] knowingly and intentionally declined to take a more active role in the [children's] lives." Indeed, the court reiterated that Kent could have taken "a more active role" in their lives "but he [chose] not to." Considering all these factors together, the court found by a preponderance of the evidence that awarding sole legal and physical custody to Rebecca, subject to Kent's right to parent-time, was in the children's best interests.

¶19   As for child support, the court found that Kent did not owe any child support arrearages before the Temporary Order was entered—the time period from September 2014 until July 2016. The court based this finding on the fact that Rebecca expressly disclaimed entitlement to child support arrearages prior to the Temporary Order. It also relied on the evidence at trial indicating that Kent "did make some payments . . . during this time period, although the amounts were inconsistent and disputed."

¶20   But the court did determine that "for the period of August 2016 to March 2019," Kent owed $18,732 in child support arrearages. Using the sole custody worksheet, the court calculated this amount using Kent's $4,630.62 monthly income and Rebecca's imputed $1,257 monthly income. In making its calculation, the court credited Kent with the $405 monthly

amounts Rebecca received on behalf of the children from social security beginning in August 2016. While entering judgment of $18,732 in favor of Rebecca, the court simultaneously vacated the earlier judgments for overdue child support.

¶21   The court rejected Kent's argument that he should be given credit for payments he made to Rebecca prior to the Temporary Order—payments he asserted would eliminate any alleged arrearages. The court reasoned that it would be "inappropriate to give [Kent] 'credit' for any supposed 'overpayments' given that (until now) there has not been a final Court order regarding child support." It further reasoned that Kent had "an obligation to support his children and that obligation is ongoing and continuous" and that "[t]he presumption, therefore, should not be that [Kent] 'overpaid,' but that [Kent] paid whatever he could or desired to, given his ongoing obligation."

¶22   On the matter of attorney fees, the court had already concluded that under Utah Code section 78B-6-311(1), as "an additional sanction for nonpayment," Kent would have to pay Rebecca's attorney fees incurred "in prosecuting the request for entry of judgment and motions for contempt." The court declined to address whether to award attorney fees under Utah Code section 30-3-3 because the parties had stipulated to paying their own remaining fees.

¶23   The court entered its findings of fact and conclusions of law as well as a supplemental divorce decree. Kent appeals.

ISSUES AND STANDARDS OF REVIEW

¶24   Kent raises four issues on appeal. First, he contends that the district court erroneously awarded a lump sum to Rebecca as alimony without conducting the required alimony analysis. We ultimately do not reach the merits of this issue because Kent

does not adequately challenge an independent alternative basis for the court's decision. *See Kendall v. Olsen*, 2017 UT 38, ¶ 12, 424 P.3d 12.

¶25 Second, Kent contends that the district court should have given him credit toward his child support obligation. Because district courts have "broad discretion" in awarding child support and "in determining the financial interests of divorced parties," we "will not disturb such decisions absent an abuse of discretion." *Roberts v. Roberts*, 2014 UT App 211, ¶¶ 7–8, 335 P.3d 378 (cleaned up).

¶26 Third, Kent contends that the district court erred in finding him in contempt of court for failing to pay child support and the lump sum to Rebecca. When reviewing a district court's decision finding a party in contempt, "we review the district court's findings of fact for clear error and its legal determinations for correctness." *LD III LLC v. Davis*, 2016 UT App 206, ¶ 12, 385 P.3d 689 (cleaned up).

¶27 Fourth, Kent contends that the district court erred in granting sole legal and physical custody of the children to Rebecca. "In custody matters, appellate courts generally give the district court considerable discretion because the district court's proximity to the evidence places it in a better position than an appellate court to choose the best custody arrangement." *Dahl v. Dahl*, 2015 UT 79, ¶ 155, 459 P.3d 276 (cleaned up). This broad discretion, however, "must be guided by the governing law adopted by the Utah Legislature." *Id.* (cleaned up).

¶28 To the extent any of Kent's contentions involve challenges to the district court's factual findings, our "review of such findings is highly deferential, and we will reverse only if the findings are clearly erroneous." *Id.* ¶ 149. "We give this deference to the district court because it stands in a superior position from which to evaluate and weigh the evidence and

assess the credibility and accuracy of witnesses' recollections." *Id.* ¶ 173 (cleaned up). A district court's factual findings "are clearly erroneous only if they are in conflict with the clear weight of the evidence, or if the court has a definite and firm conviction that a mistake has been made." *Taft v. Taft*, 2016 UT App 135, ¶ 16, 379 P.3d 890 (cleaned up).

## ANALYSIS

### I. Lump Sum as Alimony

¶29 Kent first challenges the district court's award of $44,500 in spousal support to Rebecca. In particular, Kent contends that the court abused its discretion by entering this award without "conduct[ing] the analysis required under Utah law to determine whether, and how much, spousal support should be" awarded.

¶30 Kent is correct that Utah law requires district courts to consider several factors, known as the *Jones* factors, when determining alimony. Those factors include "the financial condition and needs of the recipient spouse," "the recipient's earning capacity or ability to produce income," and "the ability of the payor spouse to provide support." Utah Code Ann. § 30-3-5(9)(a)(i)–(iii) (LexisNexis Supp. 2020);[4] *see also Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985) (listing these three factors now codified in Utah Code section 30-3-5). Further, the "court must make sufficiently detailed findings of fact on each statutory factor." *Keyes v. Keyes*, 2015 UT App 114, ¶ 33, 351 P.3d 90 (cleaned up).

---

4. Because recent statutory amendments since the relevant time are immaterial in this case, we cite the current version of the Utah Code.

¶31   The problem for Kent, however, is that the district court rejected his argument about the *Jones* analysis based on two independent grounds. And we "will not reverse a ruling of the district court that rests on independent alternative grounds where the appellant challenges only one of those grounds." *Kendall v. Olsen*, 2017 UT 38, ¶ 12, 424 P.3d 12 (cleaned up).

¶32   Here, the district court first decided that because "[t]here was a court order *requiring* [Kent] to pay [Rebecca] $44,500" and he "did not do so," the Judgment was "appropriately entered against [Kent]" and, as a result, the court "need not undergo any sort of analysis concerning the parties' current financial needs or [Kent's] ability to pay in order to permit the judgment to remain in effect." Second, the court decided that even if such an analysis was required, Kent "had the ability to pay and that the needs analysis at the time of the hearing on . . . [the Temporary Order] supported the $44,500 award to [Rebecca] and subsequent judgment against [Kent]."

¶33   Although the district court rejected his argument on these two independent grounds, Kent's appeal focuses only on the latter basis by arguing that the court inadequately analyzed the *Jones* factors at trial. His challenge to the former ground—that the Judgment requiring him to pay $44,500 was already appropriately entered against him—is limited to an assertion that the district court engaged in "circular reasoning" by concluding that "because Kent was ordered to pay before, there is no need to conduct the *Jones* analysis now." But Kent has the burden to "identify and brief" his reasons for reversal, *see id.*, and this terse assertion does not sufficiently address the effect of an order that had already been reduced to a judgment, nor does it show error in the court's treatment of the Judgment, *see generally* Utah R. App. P. 24(a)(8) (setting forth the appellant's burden to "explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal"). Consequently, Kent effectively has

challenged only one of the court's independent grounds for its ruling, and we therefore are in no position to reverse the district court. *See Kendall*, 2017 UT 38, ¶ 12. Accordingly, we reject Kent's challenge to the $44,500 award of spousal support without reaching the merits of the district court's decision.[5]

## II. Child Support

¶34   Next, Kent contends that the district court abused its discretion in determining that he is "more than $18,000 in arrears" with respect to child support for the period of August 2016 to March 2019. While acknowledging that he did not make any child support payments between November 2016 and December 2017, Kent argues that the court should have credited him with payments he made between December 2014 and July 2016, and with $11,294 paid to Rebecca in November 2016.

¶35   The district court declined to give Kent "credit" for any payments he made before the Temporary Order's entry. In particular, the court deemed it "inappropriate" to give any credits when there had not yet been a final court order regarding child support. It explained that Kent had an "ongoing and continuous" obligation to support his children and that "[t]he presumption, therefore, should not be that [Kent] 'overpaid,' but that [Kent] paid whatever he could or desired to, given his ongoing obligation." On appeal, Kent has not grappled with the court's rationale, and because he has left the court's basis for its decision unaddressed, we again conclude that he has not carried his burden to show error in that decision. *See Sandusky v. Sandusky*, 2018 UT App 34, ¶ 26, 417 P.3d 634 (rejecting an

---

5. Kent raises other arguments attacking the propriety of the lump sum award to Rebecca. But because Kent has not adequately addressed the earlier Judgment, we need not reach these arguments.

argument where the appellant did not address the basis for the district court's decision).

¶36 As for the $11,294 paid to Rebecca in November 2016, Kent now contends that these funds were a social security benefit that should have been credited against his child support obligation.[6] In support, he cites Utah Code section 78B-12-203, which states that "[s]ocial security benefits received by a child due to the earnings of a parent shall be credited as child support to the parent upon whose earning record it is based, by crediting the amount against the potential obligation of that parent." Utah Code Ann. § 78B-12-203(9)(b) (LexisNexis 2018).

¶37 But Kent has not shown, as he must, that he preserved this issue for appeal. To preserve an issue, it "must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *Taft v. Taft*, 2016 UT App 135, ¶ 35, 379 P.3d 890 (cleaned up). Thus, "the issue must be specifically raised by the party asserting error, in a timely manner, and must be supported by evidence and relevant legal authority." *Warrick v. Property Reserve Inc.*, 2018 UT App 197, ¶ 12, 437 P.3d 439 (cleaned up). "Issues that are not raised at trial are usually deemed waived." *Wohnoutka v. Kelley*, 2014 UT App 154, ¶ 3, 330 P.3d 762 (cleaned up). Further, an appellant's brief must contain "citation to the record showing that the issue was

---

6. Kent also suggests that Rebecca has received more than $18,000 related to social security disability payments since August 2016 and that the court refused to comply with its obligation to credit those payments against Kent's child support obligation. The record does not support Kent's contention. To the contrary, the court's findings of fact show that the court did reduce Kent's arrearages by "the amounts received by [Rebecca] on behalf of the [children] in the amount of $405 from social security beginning in August 2016."

preserved for review" or "a statement of grounds for seeking review of an issue not preserved." Utah R. App. P. 24(a)(5)(B).

¶38　To demonstrate that he preserved the issue regarding the $11,294 and section 78B-12-203, Kent cites one page of his response to one of Rebecca's motions for an order to show cause. There, Kent quoted the statute and stated that the social security benefits Rebecca received from his employment "is all to be credited as child support payments." But this document was filed over a year and a half before trial, and Kent did not again address section 78B-12-203 in his trial brief or in his supplemental trial brief—even when discussing the $11,294 payment. As a result, and despite an earlier attempt to raise the issue, Kent did not raise the issue in a timely manner such that the district court had an opportunity to consider it at the time the court was resolving the child support issues at trial. Kent thus did not preserve this issue regarding section 78B-12-203 and we do not consider it further.

¶39　Kent also complains that the court used the sole custody worksheet in calculating child support arrearages. He claims this calculation was erroneous because he had "joint custody" under the Temporary Order. Although the Temporary Order gave "joint legal custody" to both parties, it gave "temporary physical custody" to Rebecca. In other words, the Temporary Order gave Rebecca sole physical custody of the children. Because the custody worksheet for purposes of child support is based on physical, not legal, custody, we perceive no error in the court's use of the sole custody worksheet. *Cf. Burggraaf v. Burggraaf*, 2019 UT App 195, ¶¶ 34–35, 455 P.3d 1071 (seeing no error in the court's use of the sole custody worksheet where the mother had sole physical custody in practice).

¶40　For the foregoing reasons, Kent has not shown that the district court abused its discretion in holding him accountable for $18,732 in child support arrearages.

### III. Contempt

¶41    Kent contends that the district court erred in finding him in contempt based on his failure to comply with the orders to pay child support and $44,500 to Rebecca. "A finding of contempt is proper only when the person cited for contempt knew what was required, had the ability to comply, and intentionally failed or refused to do so." *LD III LLC v. Davis*, 2016 UT App 206, ¶ 13, 385 P.3d 689 (cleaned up).

¶42    Kent's contention on appeal centers on only one of the relevant factors: his ability to comply with the court's orders.[7] More specifically, he focuses on the court's findings regarding his ability to pay. In so arguing, he maintains that "he cannot give Rebecca the ordered $44,500 because he does not have it; he used it for his own needs with respect to housing and other related items when he moved." He also argues that the court erred in finding that he had the ability to work despite his 100% disability rating.

---

7. Kent also argues that he could "not be held in contempt of an order that is void because it was beyond the court's jurisdiction to issue." But "the only way a party can successfully attack an order which he is charged with refusing to obey is if the party can show it to be absolutely void." *Iota LLC v. Davco Mgmt. Co.*, 2016 UT App 231, ¶ 20, 391 P.3d 239 (cleaned up). To demonstrate that the district court's orders were void, Kent would have to show that the court lacked subject matter or personal jurisdiction over him at the time the orders were entered. *See id.* ¶ 21. Kent has not made that showing. He argues only that the federal law applicable to his VA benefits "implicates the court's subject matter jurisdiction." But that cursory suggestion does not show that the district court lacked "authority over the general class of cases to which the particular case at issue belongs." *See id.* ¶ 22 (cleaned up).

¶43    Kent testified that he had spent all the VA benefits (nearly $90,000) by the time of the hearing on the Temporary Order. But the district court found that this claim was "false" and contrary to Kent's representations to the commissioner. The court also found that Kent's "claim that he needed to spend all $90,000 on furnishing his new residence and other household expenses in Utah is simply not credible." Kent asserts that the court's credibility determination in this regard is "based on no evidence at all" when Rebecca introduced "no evidence to counter Kent's testimony that he had spent" all the VA benefits. But the court was "not required to believe [Kent] simply because he presented more evidence than [Rebecca] or because [she] did not directly contradict his . . . testimony." *See Sauer v. Sauer*, 2017 UT App 114, ¶ 6, 400 P.3d 1204. Indeed, "we give great deference to a trial court's determinations of credibility based on the presumption that the trial judge, having personally observed the quality of the evidence, the tenor of the proceedings, and the demeanor of the parties, is in a better position to perceive the subtleties at issue than we can looking only at the cold record." *Id.* (cleaned up). Kent has not shown that we should deviate from the considerable deference we owe to the district court's factual findings.

¶44    Kent also claimed in the district court that he is unable to work based on his 100% disability rating. But the court rejected this claim, finding that Kent presented "no corroborating evidence other than" hearsay statements. It also found that despite Kent's "disability rating and the fact that he has not held a regular job in a number of years, the evidence at trial showed that [Kent] is physically and mentally able to work, yet he chooses not to." The court based this finding on testimony that Kent, "whatever his limitations might be, leads an active lifestyle," including swimming, hiking, and taking jiu-jitsu classes. In Kent's view, the court relied on "random incidents" and had no evidence that he "was able to work any kind of job." But Kent's cursory argument does not show how the court's

factual findings were "in conflict with the clear weight of the evidence" and does not convince us that "a mistake has been made." *See Taft v. Taft*, 2016 UT App 135, ¶ 16, 379 P.3d 890 (cleaned up).

¶45 Kent also suggests that his 100% disability rating precluded the district court from finding him able to work, and he implies that the court's finding might jeopardize his disability benefits. But because he provides little legal authority and analysis to support these suggestions, he has not carried his burden to establish error. *See* Utah R. App. P. 24(a)(8) ("The argument must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal."). For these reasons, we conclude that Kent has not shown error in the district court's decision finding him in contempt.

## IV. Child Custody

¶46 Kent next contends that the district court erred in granting sole legal and physical custody of the children to Rebecca. In so arguing, Kent stresses that the court based its decision "in large part" on its belief and "misplaced anger" that "Kent exhibited poor moral character by failing to pay child support" as ordered. He also maintains that he overpaid on child support.

¶47 In determining custody, the court "shall consider the best interest of the child" and, in doing so, may consider any factors it deems relevant. Utah Code Ann. § 30-3-10(2) (LexisNexis Supp. 2020). The Utah Code identifies a number of potentially relevant factors, including but not limited to "the parent's capacity and willingness to function as a parent," "the past conduct and demonstrated moral character of the parent," the "emotional stability of the parent," the "parent's financial responsibility," "who has been the primary caretaker of the

child," and the "relative strength of the child's bond with the parent, meaning the depth, quality, and nature of the relationship between the parent and the child." *Id.*; *see also id.* § 30-3-10.2 (2019) (setting forth similar factors for consideration in determining whether the child's best interest would be served by ordering joint legal custody or joint physical custody).

¶48   In this case, Kent overlooks that the district court conducted a detailed analysis of many of the custody factors. *See supra* ¶¶ 16–18. On appeal he does not assail the majority of that analysis; instead, as stated, he limits his challenge to the court's inclusion of his history of nonpayment of child support. And he has not persuaded us that the court was wrong to consider his failure to pay child support in its analysis.[8] Moreover, while Kent believes that the court's custody decision was driven by its consideration of his nonpayment, he has not established that this factor overwhelmed the rest of the custody factors. Simply put,

---

8. Kent asserts that the "only orders that [he] ever failed to obey were ones that he believed had been issued by the court without jurisdiction, which he promptly and actively challenged." But, as explained above, *see supra* note 7, Kent has not shown that the court lacked jurisdiction to enter its orders. And "a party may not challenge a court's order by violating it." *Iota LLC*, 2016 UT App 231, ¶ 16 (cleaned up). Rather, "[t]he orderly and expeditious administration of justice . . . requires that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.'" *Id.* (quoting *Maness v. Meyers*, 419 U.S. 449, 459 (1975)). Indeed, the district court here correctly observed that "'a party is foreclosed from making a private determination that a court's order need not be obeyed because it is legally incorrect.'" (Quoting *id.* ¶ 17.) We thus are not persuaded by Kent's excuse for not complying with the orders.

nothing in the court's analysis or Kent's argument persuades us that the court erred in making its custody decision.

## V. Attorney Fees on Appeal

¶49 Finally, Rebecca requests that this court award her attorney fees on appeal on two grounds. First, Rebecca asserts that the district court awarded her attorney fees related to Kent's contempt with respect to the $44,500 and child support and that she is thus entitled to attorney fees on appeal for defending the appeal on that issue. Second, Rebecca asks this court to remand for the district court to make findings under Utah Code section 30-3-3 to support an award of attorney fees to her for all issues on appeal.

¶50 Generally, "attorney fees are awardable only if authorized by statute or by contract." *Greyhound Lines, Inc. v. Utah Transit Auth.*, 2020 UT App 144, ¶ 55, 477 P.3d 472 (cleaned up). This court ordinarily will award appellate attorney fees "when a party was awarded fees and costs below and then prevails on appeal." *Tobler v. Tobler*, 2014 UT App 239, ¶ 48, 337 P.3d 296. Because the district court awarded Rebecca attorney fees related to her "request for entry of judgment and motions for contempt" pursuant to statute under Utah Code section 78B-6-311(1) and because she has prevailed on that issue on appeal, *see supra* ¶¶ 41–45, we grant her request for appellate fees related to that one issue. *See Tobler*, 2014 UT App 239, ¶ 48; *cf. Telegraph Tower LLC v. Century Mortgage LLC*, 2016 UT App 102, ¶ 52, 376 P.3d 333 (awarding appellate attorney fees on the single issue on which appellees prevailed below and successfully defended on appeal); *Macris v. Sevea Int'l, Inc.*, 2013 UT App 176, ¶ 53, 307 P.3d 625 (awarding partial attorney fees on appeal for the issues on which the appellee was successful on appeal). We thus remand this case to the district court to calculate Rebecca's reasonable attorney fees incurred in defending that issue on appeal.

¶51　As for Rebecca's suggestion that she could be "entitled to attorney fees for the entirety of the appeal" under Utah Code section 30-3-3, we conclude that she is not entitled to such an award. The parties stipulated to paying their own attorney fees incurred during the district court proceedings, and the district court expressly declined to consider whether to award fees under Utah Code section 30-3-3. Because the district court did not award attorney fees based on section 30-3-3 to Rebecca below and because she has not otherwise established that she should be awarded her remaining attorney fees on appeal, *see Tobler*, 2014 UT App 239, ¶ 48, we decline Rebecca's invitation to instruct the district court to analyze her general claim for appellate attorney fees.

CONCLUSION

¶52　Kent has not established error in the district court's decisions. Accordingly, we affirm the supplemental decree, but we remand to the district court for the limited purpose of calculating Rebecca's attorney fees reasonably incurred on appeal, insofar as they are related to the issue of contempt.

————————